776 February 13, 2014 No. 9

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Marriage of

Steven Allan CHASE,
*Petitioner on Review,*
*and*

STATE OF OREGON,
*Petitioner below,*
*and*

Cathy Lynn CHASE,
*Respondent on Review.*

(C981383DR; CA A148342; SC S061222)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 7, 2013.

Clayton C. Patrick, Clayton C. Patrick P.C., Clatskanie, argued the cause and filed the petition for petitioner on review.

Howard Hudson, Eugene, argued the cause and filed the brief for respondent on review.

BREWER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to that court for further proceedings.

_____
* Appeal from Washington County Circuit Court, Andrew R. Erwin, Judge. 255 Or App 388, 296 P3d 1278 (2013).

**BREWER, J.**

Father seeks review of a judgment for unpaid past child support (the arrearage judgment). In the judgment document, the circuit court imposed judgment for the unpaid installments and accrued interest on each installment, and—pursuant to ORS 82.010(2)(c)—postjudgment interest on both the amount of the unpaid installments and the accrued interest. Father appealed, and, relying on its own prior case law, the Court of Appeals affirmed. *Chase and Chase*, 255 Or App 388, 296 P3d 1278 (2013).

The outcome of this case primarily hinges on the application of two paragraphs of ORS 82.010(2), which governs postjudgment interest awards. Paragraph (2)(b) provides that "[i]nterest on a judgment under this subsection is simple interest, unless otherwise provided by contract." Paragraph (2)(c), on which the circuit court relied, provides that "[i]nterest accruing from the date of the entry of a judgment shall also accrue on interest that accrued before the date of entry of a judgment." For the reasons set out below, we conclude that the interest at issue in this case is not interest to which ORS 82.010(2)(c) refers. After an initial judgment is entered requiring payment of child support in future recurring installments, interest on unpaid installments is postjudgment, not prejudgment interest, and is not governed by paragraph (2)(c) of ORS 82.010. We reverse the decision of the Court of Appeals, reverse the arrearage judgment, and remand to the circuit court.

The pertinent facts are procedural and undisputed. In 1999, the circuit court entered a general judgment dissolving the parties' marriage. The judgment included a child support award that required father to make periodic installment payments to mother on behalf of the parties' minor children. The monthly amount of the child support award was modified by a series of supplemental judgments entered thereafter, and, in two additional instances, the circuit court entered arrearage judgments for unpaid past child support. In 2010, after entry of the most recent supplemental judgment modifying the amount of monthly child support, the Washington County District Attorney issued a "Notice of Intent to Establish and Enforce Arrears and Interest," and father requested an administrative hearing

on that issue. An administrative law judge (ALJ) issued a final order that established support arrears, but provided that "interest should not be added to the child support order." The ALJ explained that the establishment of the arrears did not result in a new judgment but, rather, was "an accounting procedure which assists the state and the parties in reconciling the books and determining the amount owed."

Mother petitioned the circuit court for *de novo* review of the final order. Based on the Court of Appeals' construction of ORS 82.010(2)(c) in *Mannix and Mannix*, 146 Or App 36, 932 P2d 70 (1997), the circuit court concluded that it was required to impose interest on the support arrearages, including interest on previously accrued and unpaid interest. The circuit court therefore entered a judgment providing that the total amount of arrears was $33,072.01 and that the total amount of "net cumulative interest" was $16,851.38. The judgment included a money award for the sum of those two amounts, $49,923.39, and provided that interest would accrue on that sum at nine percent per annum from the date that the judgment was entered. As noted, the Court of Appeals affirmed, and we allowed review.

On review, father first contends that Oregon law does not authorize the entry of arrearage judgments after a child support award has been established in a governing general or supplemental judgment. Accordingly, father argues that the circuit court lacked authority to enter the instant arrearage judgment in the first place. Alternatively, father asserts that the part of the arrearage judgment that provided for interest on interest was entered in violation of ORS 82.010(2)(b). In particular, father argues that ORS 82.010(2)(c) was meant to apply only to unpaid interest that might have accrued before the entry of previous child support judgments, and here, there was none. According to father, paragraph (2)(c) merely sets out an exception to the "general rule" of paragraph (2)(b), which states that, unless otherwise provided by contract, interest imposed on judgments is "simple interest."

Mother responds:

"ORS 82.010(2)(c) by its plain wording permits pre-judgment interest to be incorporated in 'a judgment' document

with money award that also then accrues interest from the date of that later judgment. ORS 82.010(2)(c). In the case of a support award in an arrearage enforcement action, that pre-judgment interest would be the interest that accrues for unpaid support before that unpaid support is reduced to a supplemental judgment document. Nothing in ORS 82.010(2)(c) requires that the interest included in 'a judgment'—the later judgment—must solely refer to the general judgment of dissolution or custody which established the original support scheme and money award."

With the parties' arguments thus framed, the primary issue before us is one of statutory construction involving the meaning of ORS 82.010(2).[1] Our goal is to determine the meaning of the statute that the legislature that enacted it most likely intended. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To determine the intended meaning of the statute, we examine its text, in context, and, where appropriate, legislative history and relevant canons of construction. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). This court has emphasized that, in determining the intended meaning of a statute,

"there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes. Only the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law. The formal requirements of lawmaking produce the best source from which to discern the legislature's intent, for it is not the intent of the individual legislators that governs, but the intent of the legislature as formally enacted into law[.]"

*Id.* at 171 (citations and internal quotation marks omitted). We begin, therefore, with the words of the statute at issue.

ORS 82.010(2) provides, in part:

"Except as provided in this subsection, the rate of interest on judgments for the payment of money is nine percent per annum. The following apply as described:

---

[1] Because the issues are intertwined, we defer resolution of father's challenge to the circuit court's authority to enter the arrearage judgment in the first place to a later part of our analysis.

"(a)   Interest on a judgment under this subsection accrues from the date of the entry of the judgment unless the judgment specifies another date.

"(b)   Interest on a judgment under this subsection is simple interest, unless otherwise provided by contract.

"(c)   Interest accruing from the date of the entry of a judgment shall also accrue on interest that accrued before the date of entry of a judgment.

"(d)   Interest under this subsection shall also accrue on attorney fees and costs entered as part of the judgment.

"(e)   A judgment on a contract bearing more than nine percent interest shall bear interest at the same rate provided in the contract as of the date of entry of the judgment."

As discussed, our primary focus is on paragraphs (2)(b) and (2)(c) of ORS 82.010. On the surface of things, the meaning of those paragraphs appears to be straightforward. By its terms, paragraph (2)(b) provides for the accrual of simple interest after the entry of a judgment. "Simple interest," as the term is used in paragraph (2)(b), refers to "interest paid on the principal only and not on accumulated interest." *Black's Law Dictionary* 817 (7th ed 1999). Thus, paragraph (2)(b) provides that, in the absence of a different contractual arrangement, postjudgment interest accrues on only the principal amount of a judgment debt, not on interest that accrues on the principal amount of the judgment debt. Paragraph (2)(c) also pertains to the accrual of postjudgment interest, but it addresses a different subject than paragraph (2)(b); that is, paragraph (2)(c) provides for the accrual of postjudgment interest on interest on the principal amount of a judgment debt "that accrued before the date of entry of a judgment." The combined effect of those provisions is that, when interest "accrued before the date of entry of a judgment," postjudgment interest accrues on (1) the principal amount of the judgment under paragraph (2)(b), and (2) prejudgment interest under paragraph (2)(c). All the postjudgment interest is simple interest, because it does not

compound at the end of designated periods after the entry of judgment.[2]

It follows from the foregoing discussion that the choice between paragraph (2)(b) and paragraph (2)(c) of ORS 82.010 is not purely alternative. Instead, paragraph (2)(b) applies (in the absence of a different contractual arrangement) to all judgments, paragraph (2)(c) applies to some judgments, and, where paragraph (2)(c) applies, it combines with paragraph (2)(b) to provide for postjudgment interest on both principal and prejudgment interest. Thus, the dispositive question is not which of the two provisions applies, but, rather, whether paragraph (2)(c) applies to the circumstances here. The answer to that question lies in determining what is meant by the phrase "interest that accrued before the date of entry of a judgment." In mother's view, as applicable here, that phrase refers to all interest on father's unpaid child support obligation that accrued before the entry of the arrearage judgment itself. In father's view, that interpretation confuses the concepts of prejudgment and postjudgment interest. As father sees things, all the interest that accrued before the entry of the arrearage judgment had accrued *after* the entry of previous child support judgments that, themselves, accrued postjudgment interest. Therefore, father reasons, the accrued interest at issue here was postjudgment interest, not prejudgment interest to which paragraph (2)(c) applies. It follows, according to father, that although paragraph (2)(b) applies, paragraph (2)(c) does not.

From a purely textual standpoint, the meaning of the disputed phrase is not obvious, at least in the circumstance where—as here—one or more related judgments preceded the entry of the judgment at issue. However, the statutory history of ORS 82.010 and the case law underlying its evolution provide a clearer contextual picture. ORS

---

[2] Simple interest stands in contrast to compound interest, which is interest payable on the combined sum of the original principal of a debt and interest accrued and payable at the end of designated periods, sometimes referred to as "rests" or "stops." *See Black's* at 467; *see also Stephan v. Equitable Sav. and Loan Ass'n*, 268 Or 544, 572, 522 P2d 478 (1974) (describing periodic rest attribute of compound interest).

82.010(2)(a) to (e) have existed in their present form since 1987. Or Laws 1987, ch 215, § 18; Or Laws 1987, ch 873, § 26. Before paragraph (2)(c) was enacted, no statute authorized an award of postjudgment interest on prejudgment interest. However, in previous decisions, this court had endorsed such awards where the judgment creditor was entitled to prejudgment interest. One of those decisions, in particular, had illuminated the distinct purposes that are served by prejudgment and postjudgment interest awards.

In *Highway Comm. v. DeLong Corp.*, 275 Or 351, 357-58, 551 P2d 102 (1976), this court stated:

> "Interest on a claim or judgment is largely a creature of statute or Constitution. Only with respect to a narrow category of claims does one find a 'legal right' to prejudgment interest at the common law. As for interest on a judgment, there is no common-law right. Post-judgment interest, owing its existence to statute, is subject to reasonable statutory regulation limited only by constitutional interdiction.

> "'Prejudgment interest is awarded, in the case of injury to, or the loss or destruction of property, on the theory that it is necessary to give full compensation for the loss sustained. Post-judgment interest, on the other hand, is awarded on a different theory, that is, as a penalty for delayed payment on the judgment. Typically, then, all interest to which an aggrieved party is entitled as part of his 'full compensation' is incorporated and merged in the judgment.'"

*Id.* (internal citations omitted; internal quotations omitted). Three years later, in *Meskimen v. Larry Angell Salvage Co.*, 286 Or 87, 98, 592 P2d 1014 (1979), this court—relying on *DeLong Corp.*—reiterated that, "[w]here pre-judgment interest is awarded, it should be made a part of the judgment so that post-judgment interest will apply to it."

The legislative history of the 1987 amendments to ORS 82.010(2) suggests that the new provisions "incorporate[d] case law on how interest accumulates on judgments." Staff Measure Summary, Senate Judiciary Committee, SB 566, Apr 22, 1987. From that statement, we infer that, in enacting ORS 82.010(2)(b) and (c), the legislature meant to

codify the common law principles pertaining to the accumulation of interest on judgments that this court previously had adopted, likely including the principles that this court had approved in *DeLong Corp.*

   The foregoing contextual history thus clarifies the nature of the type of interest to which paragraph (2)(c) of ORS 82.010 refers. In general, such interest is awarded to fully compensate a judgment creditor for a prejudgment loss of the use of money or property that otherwise would go unremedied. *DeLong Corp.*, 275 Or at 358. A typical example is the loss of use of money for which interest accrues on an unpaid promissory note or an overdue account before the principal amount of the debt is reduced to judgment. As elaborated below, however, no such predicate exists in the circumstances of this case; instead, the interest that had accumulated before the entry of the arrearage judgment was postjudgment interest that had accrued on unpaid child support installments. To explain why that is so, we first consider a fundamental aspect of the nature of a periodic child support award, namely, that such an award results in a judgment for each installment as it accrues.

   A child support award is a money award. ORS 18.005(2). Such an award can be entered in a limited judgment, a general judgment, or a supplemental judgment. *See generally* ORS 18.005(7), (13), (17) (defining three categories of judgments); ORS 18.038(2) (requiring judgment document to indicate judgment type). Regardless of the form of judgment that it takes, though, such a money award is a judgment. ORS 18.005(14). In addition:

> "The judgment is final as to any installment or payment of money that has accrued up to the time the nonmoving party, other than the state, is served with a motion to set aside, alter or modify the judgment. The court may not set aside, alter or modify any portion of the judgment that provides for any payment of money, either for minor children or for the support of a party that has accrued before the motion is served."

ORS 107.135(7).

The judgment status of a periodic child support award has two implications that are pertinent here. The first implication is legal: where due and unpaid, each support installment represents a judgment obligation and accrues postjudgment interest. ORS 82.010(2)(b); ORS 18.049.[3] The second implication is practical: where support installments have not been paid, the operative judgment requiring the payment of the installments—whether a general judgment or a supplemental judgment modifying an earlier support award—does not establish the amount in arrears for enforcement purposes. In addition, child support awards are prospectively modifiable, and successive supplemental judgments can be entered over time to document changes in the amount of a periodic award. As a consequence, in Oregon Revised Statutes, chapters 25 and 416, the legislature has enacted a comprehensive statutory scheme to address the problems of ascertaining and enforcing arrearages and resolving conflicts arising from the existence of multiple child support awards.[4] An understanding of that statutory scheme is helpful to a proper resolution of this case.

When a child support obligation is delinquent, ORS 25.167 establishes procedures for determining the amount of arrearage and for making a record of the arrearage. A record of support payment arrearage may be established by an "administrative order issued under ORS 416.427 or 416.429." ORS 25.167(1)(c). Under ORS 416.429(1), "[t]he administrator[5] may issue a notice of intent to establish and

---

[3]  ORS 18.049 provides, in part:

"After entry of a judgment, the amount owing on the money award portion of a judgment shall be decreased by all payments made by or on behalf of the judgment debtor against the money award and shall be increased by interest accruing on the money award."

[4]  Consistently with ORS 107.135(7), where a judgment includes a periodic child support award, and an installment becomes due under the terms of the award and is not paid, a judgment arrearage lien attaches to the obligor's real property in the county or counties in which the judgment is entered or recorded. ORS 18.005(18); ORS 18.150(3)(b); ORS 18.152(3)(c). We note the existence of, but do not separately discuss, the procedure set out in ORS 18.238(1) for the satisfaction of a money award that is available where the obligor cannot otherwise obtain a satisfaction document from a judgment creditor.

[5]  The "administrator" under ORS 416.427(1) means "either the Administrator of the Division of Child Support of the Department of Justice or a district attorney" or the authorized representative of either. ORS 416.400(1); ORS 25.010(1).

enforce arrearages for any support order that is registered, filed or entered in this state."[6]

In accordance with ORS 25.167(1)(c), the amount of the child support arrearage in this case was initially established under ORS 416.429. After the administrator—in this case, the district attorney—issued a notice of intent to establish and enforce arrears and interest under ORS 416.429(1), father requested a hearing before an ALJ under ORS 416.427.[7] *See* ORS 416.429(3) (setting out right to hearing). And, when the ALJ rejected mother's request for "interest on interest," mother sought a hearing *de novo* before the circuit court pursuant to ORS 416.427(6).[8]

When, in turn, the circuit court entered the instant arrearage judgment after a hearing, it acted under ORS 25.089, which provides, in part:

"(1)   As used in this section, 'child support judgment' means the terms of a judgment or order of a court, or an order that has been filed under ORS 416.440, that provide for past or current child support[.]

"(2)(a)   A child support judgment originating under ORS 416.440 has all the force, effect and attributes of a circuit court judgment. The judgment lien created by a child support judgment originating under ORS 416.440 applies

---

[6] If no timely written response and request for hearing is received by the appropriate office, "the administrator shall enter an order directing that the amount of the arrearages stated in the notice be entered in the child support accounting record maintained by the Department of Justice." ORS 416.429(4).

[7] ORS 416.427 provides, in part:

"(2) Except as provided in ORS 416.430, hearings shall be conducted by an administrative law judge assigned from the Office of Administrative Hearings.

"* * * * *

"(6) Appeal of the order of the administrative law judge or any default or consent order entered by the administrator pursuant to ORS 416.400 to 416.465 may be taken to the circuit court of the county in which the order has been entered pursuant to ORS 416.440 for a hearing de novo."

[8] ORS 416.440 sets out the procedures for enforcing administrative support orders, including final orders entered after a hearing before an ALJ under ORS 416.427. If father had not sought review in the circuit court, on entry in the court register, the ALJ's order would have had "all the force, effect and attributes of a judgment of the circuit court[.]" ORS 416.440(3); *see also* ORS 18.075(8) ("Administrative orders entered in the register under ORS 416.440 have the effect provided for in that section.").

to all arrearages owed under the underlying order from the date the administrator or administrative law judge entered, filed or registered the underlying order under ORS 416.400 to 416.465 or ORS chapter 110."[9]

The arrearage judgment that the circuit court entered in this proceeding provided for past support and, thus, was a child support judgment under ORS 25.089(1). Accordingly, we reject father's argument that the court lacked authority to enter it.[10] The question remains whether that judgment properly imposed postjudgment interest on previously accrued interest on the unpaid child support installments.

In that regard, mother contends that the arrearage judgment was independent of the most recently entered supplemental child support judgment in this case and that all the interest that had accrued on unpaid installments under that judgment, previous supplemental judgments, the general dissolution judgment, and previous arrearage judgments, had accrued "before the date of entry of a judgment"

_____

[9] ORS 25.089 further provides, in part:

"(2)(b) Until the underlying order is filed under ORS 416.440, the order may not be enforced against and has no lien effect on real property.

"(c) No action to enforce a child support judgment originating under ORS 416.440 may be taken while the child support judgment is stayed under ORS 416.427, except as permitted in the order granting the stay.

"(3) In any judicial or administrative proceeding in which child support may be awarded under this chapter or ORS chapter 107, 108, 109, 110 or 416 or ORS 125.025, 419B.400 or 419C.590, if a child support judgment already exists with regard to the same obligor and child:

"(a) A court may only enforce the existing child support judgment, modify the existing child support judgment as specifically authorized by law or set aside the existing child support judgment under subsection (6) of this section or under the provisions of ORCP 71. If the court sets aside the existing child support judgment, the court may issue a new child support judgment.

"(b) The administrator or administrative law judge may only enforce the existing child support judgment, modify the existing child support judgment as specifically authorized by law or, with regard to an existing child support judgment originating under ORS 416.400, move to set aside the existing child support judgment under subsection (6) of this section or for the reasons set out in ORCP 71."

[10] Similarly, if the ALJ had entered an order filed under ORS 416.440 that provided for past child support and that had become final in the absence of circuit court review, such an order would have qualified as a child support judgment that had "all the force, effect and attributes of a circuit court judgment." ORS 25.089(2)(a); ORS 416.440(3).

within the meaning of ORS 82.010(2)(c). In support of that assertion, mother contends that the arrearage judgment was a "governing child support judgment" under ORS 25.091. That statute provides, in part:

"(1)   As used in this section:

"(a)   'Child support judgment' has the meaning given that term in ORS 25.089.

"(b)   'Governing child support judgment' means a child support judgment issued in this state that addresses child support *** and is entitled to exclusive prospective enforcement or modification with respect to any earlier child support judgment issued in this state."

Mother's assertion is incorrect, and, with respect, it is also beside the point. It is incorrect because, although the arrearage judgment at issue here was a child support judgment under ORS 25.089(1), it was not a *governing* child support judgment; that is, it was not "entitled to exclusive prospective enforcement or modification with respect to any earlier child support judgment issued in this state." ORS 25.091(1)(b). Moreover, as far as the nature of the disputed interest is concerned, it would not have mattered if the child support arrearages had been established in a governing child support judgment.[11] As discussed, prejudgment interest to which ORS 82.010(2)(c) applies must have been imposed to make a judgment creditor whole for losses suffered before a judgment is entered. Because child support installments are judgment obligations, they accrue postjudgment interest under ORS 82.010(2)(b) as a statutory penalty for the obligor's failure to pay a judgment when due; such interest is not imposed to compensate the obligee for a prejudgment loss. In short, after an initial judgment is entered requiring payment of child support in future recurring installments, interest on unpaid installments is postjudgment, not prejudgment interest, and is governed by paragraph (2)(b), not paragraph (2)(c), of ORS 82.010.

For those reasons, we conclude—subject to the caveat described in the next paragraph—that the arrearage

---

[11] Governing child support judgments can be used to reconcile child support arrearages. ORS 25.091(8)(d).

judgment that the circuit court entered in this case merely should have established the unpaid past child support amounts that father owed, including accrued interest on those amounts, as of the date that the arrearage judgment was entered. Postjudgment interest on the arrearage judgment would then accrue on the unpaid child support amounts—but not on previously accrued interest on those amounts—as simple interest under ORS 82.010(2)(b).

There is a final wrinkle, however. As noted, the total amount of accrued interest specified in the instant arrearage judgment is $16,851.38. Of that sum, $11,948.80 was "interest on interest" that accrued on previous arrearage judgments from which father had failed to appeal, and $4,902.58 was "interest on interest" that accrued before entry of the instant judgment but after entry of the last prior arrearage judgment. Father concedes that his failure to timely challenge the imposition of "interest on interest" in previous arrearage judgments from which he failed to appeal (amounting to $11,948.80) precludes him from now challenging the inclusion of those previously imposed interest amounts in the instant arrearage judgment. We agree. It follows that only the sum of $4,902.58—the amount that falls within the scope of father's preserved challenge on appeal—must be subtracted from the judgment.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.