LAGESEN, P. J.
*653 Petitioner has petitioned for reconsideration of our decision in Bowerman v. Lane County , 287 Or. App. 383, 403 P.3d 512 (2017). In that decision, we affirmed LUBA's decision to remand to Lane County its decision ministerially approving petitioner's application for a sequence of nine lot line adjustments.
*173 Id . at 385, 403 P.3d 512. LUBA remanded based on its conclusion that the county committed two procedural errors: (1) that the county erred by employing a ministerial process to approve the lot line adjustments and was required, instead, to use the planning director review process otherwise required by Lane Code 13.450(5); and (2) that the county erred by approving adjustments to property lines that would not exist but for the county's approval of property line adjustments requested in the early part of the sequence and that, as of the time of approval, were not reflected in recorded deeds. Id . We concluded that LUBA correctly had remanded on the first and affirmed on that basis. Id . We did not address the second ground for remanding for a discretionary reason: that we were not reasonably certain that it would recur following remand and that it was, therefore, premature to consider it. Id. at 385, 398, 403 P.3d 512.
As noted, petitioner now seeks reconsideration of our decision. The county, which has not previously appeared in this judicial review, supports that request for reconsideration. Neither petitioner nor the county contests the correctness of our conclusion that the county was required to use the planning director approval process to approve petitioner's requested property line adjustments and that a remand is required for that reason. Rather, both petitioner and the county assert that reconsideration is warranted for the purpose of deciding the issue that we left undecided-that is, whether ORS chapter 92, which governs property line adjustments, precludes a local government from permitting an applicant from requesting the approval of a sequence of property line adjustments when one or more of the proposed adjustments are to property lines that will not exist unless the local government approves the adjustments requested earlier in the sequence. They argue that the issue is almost certain to recur following the remand. Petitioner asserts that he has a significant interest in knowing whether he *654 must pay only a single application fee or must, instead, submit multiple applications and pay multiple application fees. The county points out that it has a strong interest in knowing whether it can permit an applicant to submit a single application requesting a sequence of multiple property line adjustments where, as here, some of the requested adjustments are to property lines that will not exist unless the county approves one or more of the adjustments requested earlier in the sequence. The remaining respondents oppose reconsideration, arguing that we should adhere to our discretionary decision not to address the single application issue at this time.
Having considered the parties' arguments, we are persuaded to allow reconsideration to resolve the issue that we previously declined to address. At a minimum, we are convinced that resolving it will afford needed clarity to the county regarding the constraints on its property line adjustment approval process that likely will affect how it permits petitioner to apply for approval on the nine lot line adjustments that he seeks as well as the process the county will employ to process other similar applications. With that said, we conclude that, on the merits, ORS chapter 92 does not contain a limitation on property line adjustment applications. LUBA therefore erred when it concluded that ORS chapter 92 prohibited the county from approving the requested sequence of lot line adjustments because they were requested in a single application.
A detailed recitation of the facts underlying this dispute can be found in our original opinion. Bowerman , 287 Or. App. at 388-91, 403 P.3d 512. To provide context for the question before us on reconsideration, we set forth our previous description of LUBA's resolution of the legal issue now before us:
"LUBA also concluded that a remand was required for a different reason: ORS chapter 92 implicitly precludes a local government from approving more than one property line adjustment in a single decision where, as of the time of decision, some of the adjustments are to property lines that are not yet reflected in recorded deeds."
287 Or. App. at 391, 403 P.3d 512. As we also noted in our initial opinion, LUBA's decision on the issue was not unanimous:
*655 "Board Member Ryan dissented on that point, reasoning that the text of ORS chapter 92 did not impose the limitation imposed *174 by the LUBA majority, and that a local government could adequately address the concerns expressed by the majority through conditions of approval, making the approval contingent on the applicant recording the necessary property line adjustment deed or deeds."
Thus, as framed by LUBA's decision, the question before us now is whether LUBA was correct to conclude that, under ORS chapter 92, a local government is prohibited from approving an application for a property line adjustment or adjustments if one or more of the requested adjustments are to a property line that is not yet reflected in a recorded deed. That is a question of statutory construction, which we review for legal error. Trautman/Conte v. City of Eugene , 280 Or. App. 752, 758, 383 P.3d 420 (2016). Our job, as always, is to determine the meaning of the provisions at issue that the enacting legislature most likely intended. State v. Robinson , 288 Or. App. 194, 198-99, 406 P.3d 200 (2017). We do so by examining the statutory "text, in context, and, where appropriate, legislative history and relevant canons of construction." Chase and Chase , 354 Or. 776, 780, 323 P.3d 266 (2014). As we conduct our inquiry, we keep in mind the legislature's general directive to us about how to construe statutes: "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010. Said another way, we must not, in the guise of interpreting a statute, rewrite it to include provisions that the legislature itself did not include.
In our view, those constraints on our interpretive authority do not permit us to sustain LUBA's interpretation of ORS chapter 92. As the dissenting board member recognized, the primary difficulty with that interpretation of ORS chapter 92 is that no provision contained within it imposes the limitation that LUBA found. LUBA identified no such provision, and we have not been able to find one. This alone weighs strongly in favor of the conclusion that the legislature did not intend to impose the limitation identified by LUBA. It would have been easy enough for the legislature to *656 adopt a clear requirement that a local government may not approve the adjustment to a previously adjusted property line until the previous adjustment is reflected in a recorded deed, if the legislature intended to impose such a requirement. For us to construe the provisions of ORS chapter 92 to include such a limitation would effectively require us to insert provisions into the chapter that the legislature itself did not include. That is contrary to the legislature's directive to us in ORS 174.010 as to how we are to perform our interpretive function.
LUBA acknowledged that ORS chapter 92 does not explicitly contain a prohibition on the approval of adjustments to property lines not yet reflected in recorded deeds. It nonetheless concluded that such a limitation is implicit in ORS chapter 92. In so doing, it relied primarily on one of its own prior decisions, Warf v. Coos County , 43 Or. LUBA 460 (2003),[1] and on ORS 92.190(3) and (4). ORS 92.190(3) provides:
"The governing body of a city or county may use procedures other than replatting procedures in ORS 92.180 and 92.185 to adjust property lines as described in ORS 92.010 (12), as long as those procedures include the recording, with the county clerk, of conveyances conforming to the approved property line adjustment as surveyed in accordance with ORS 92.060 (7)."
And ORS 92.190(4) provides that a
"property line adjustment deed shall contain the names of the parties, the description of the adjusted line, references to original recorded documents and signatures of all parties with proper acknowledgment."
According to LUBA, " ORS 92.190(3) requires that a deed be recorded to complete a *175 property line adjustment" and " ORS 92.190(4) requires that a property line adjustment deed must include a reference to the original recorded *657 deed for the properties for which a property line adjustment deed is being recorded." In the view of the LUBA majority, that
"statutory requirement [in ORS 92.190(4) ] is problematic where a single decision approves multiple property line adjustments, including further adjustment of adjusted properties, because it would be difficult or impossible to refer to the 'original recorded documents and signature of all parties' because on the date the property line adjustments were approved those documents would not yet have been recorded."
LUBA may be right about the challenges a local government may face when considering whether and how to approve an application for multiple property line adjustments, including adjustments to property lines not yet reflected in recorded deeds. But those potential practical hurdles do not inform our interpretation of ORS 92.190, which must turn on what the legislature has stated in that statute and its context.[2] And, like the dissenting LUBA board member, the text of ORS 92.190(3) and (4) lacks any indication that the legislature intended to prohibit a local government from approving an adjustment to a property line that, as of the time of the approval decision, is not yet reflected in a recorded deed.
If anything, the plain terms of ORS 92.190(3) point in a different direction. When the words of the statute are given their most natural reading, ORS 92.190 expressly grants local governments wide latitude to establish their own procedures for the approval of property line adjustments: "The governing body of a city or county may use procedures other than replatting procedures in ORS 92.180 and 92.185 to adjust property lines as described in ORS 92.010(12) ***." ORS 92.190(3). The only explicit limitation on that authority is that the procedures adopted by a local government must provide for recording of approved property line adjustments. Id. That allows a local government the discretion to approve a series of requested property line *658 adjustments, including to property lines not yet reflected in recorded deeds, contingent upon an applicant recording each approved adjustment in proper sequence. In any event, the statute cannot reasonably be read to prohibit such a process categorically.
ORS 92.190(4) also does not indicate such a prohibition. It simply specifies what information must be included in property line adjustment deeds:
"A property line adjustment deed shall contain the names of the parties, the description of the adjusted line, references to original recorded documents and signatures of all parties with proper acknowledgment."
A county's approval of sequential property line adjustments could accommodate the deed information requirements by conditioning approval on the requirement that each deed comply with ORS 92.190(4). In this case, petitioner calls attention to the fact that is exactly what happened: After the county's approval of the property line adjustments, the deeds were recorded in the order necessary to adjust each property line prior to adjusting an additional property line-exactly as they would have been had the county approved petitioner's requested property line adjustments in the context of a series of separate applications.
Accordingly, nothing in ORS chapter 92 suggests that the legislature intended categorically to make the recording of an approved property line adjustment a mandatory prerequisite to a local government's approval of a further adjustment to that property line. On the contrary, the terms of ORS 92.130 give a local government wide latitude to determine the procedures for approving property line adjustments, provided that those procedures call for the recording of each approved adjustment. LUBA erred in concluding to the contrary.
Notwithstanding that error, we adhere to our previous decision to affirm LUBA's decision *176 remanding to the county for the reasons explained in our prior opinion. Although we have determined that LUBA erred when it concluded that the county erred by approving petitioner's multiple requested property line adjustments in a single decision *659 because some of the property lines adjusted were not yet reflected in recorded deeds, as explained in our previous opinion, LUBA correctly concluded that the county erred by approving petitioner's application through the ministerial process rather than through the planning director review process. As a result, a remand to the county is required, even though one of LUBA's two bases for remanding was erroneous.
Reconsideration allowed; former disposition withdrawn; opinion modified and adhered to as modified; affirmed in part, reversed in part.

The dissenting board member concluded that LUBA's prior decision in Warf had "no real relevance to the issue presented" because the statutory provisions construed in Warf had been amended to eliminate the wording on which the Warf decision turned. The Warf decision has no bearing on our interpretation of ORS chapter 92 because LUBA's interpretations of statutes do not bind the appellate courts.

We have been unable to locate any legislative history addressing whether a local government may approve an adjustment to a property line before the property line has been documented in a recorded deed.