Argued and submitted December 20, 2007, affirmed April 16, petition for review denied July 23, 2008 (345 Or 158)

SHOTGUN CREEK RANCH, LLC,
*Plaintiff-Appellant,*

*v.*

CROOK COUNTY,
*Defendant-Respondent.*

Crook County Circuit Court
02CV0061; A132214

182 P3d 312

Gregory P. Lynch argued the cause for appellant. With him on the briefs were Stanley D. Austin and Miller Nash LLP.

David M. Gordon, Crook County Legal Counsel, argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

"Legalization" is a statutory process by which a county governing body can establish the disputed existence or uncertain location, or both, of a county road. *See* ORS 368.201 - 368.221 (describing process). In this case, the governing body of Crook County, the Crook County Court, legalized a road known as Shotgun Road. The location as legalized by the county court traversed property owned by plaintiff Shotgun Creek Ranch. Plaintiff sought a writ of review in circuit court; the court affirmed. Plaintiff appeals, arguing that the county court had no authority to undertake the legalization; that process, plaintiff argues, applies only to roads that are indisputably county roads, and Shotgun Road was never lawfully established as one. Plaintiff also contends that, even if the county court had legalization authority, the court misapplied it. Defendant, the county, maintains that the county court had statutory authority and properly exercised it. We agree with the county and affirm.

In 1879, the governing body of Wasco County, which at the time included today's Crook County, decided that a part of what was then known as the Prineville to Camp Creek Road should become a county road. As required by statute, the county court ordered a survey, after which it issued an order establishing what became known as Shotgun Road. In 2002, some property owners whose land abutted the road questioned whether the road's location as used matched the location of the road surveyed in 1879; the road as used ran mostly on the south side of the Crooked River, and the residents believed that the original survey located the road (or at least some parts of it) on the north side. In response, Crook County, through its governing body, undertook the legalization process.

The statute authorizing legalization of county roads provides:

"A county governing body may initiate proceedings to legalize a county road under ORS 368.201 to 368.221 if any of the following conditions exist:

"(1) If, through omission or defect, doubt exists as to the legal establishment or evidence of establishment of a public road.

"(2) If the location of the road cannot be accurately determined due to:

"(a) Numerous alterations of the road;

"(b) A defective survey of the road or adjacent property; or

"(c) Loss or destruction of the original survey of the road.

"(3) If the road as traveled and used for 10 years or more does not conform to the location of a road described in the county records."

ORS 368.201. Once a county decides to initiate the legalization process, it must authorize a survey "to determine the location of the road." ORS 368.206(1)(a). The survey is then filed with the county governing body, which, after notice, holds a legalization proceeding. ORS 368.206(1)(c). The proceeding is conducted by the county's governing body, and, although that body must allow "any person" to present relevant information, ORS 368.206(2), and that information must be "considered," the governing body can decide either to abandon or complete the legalization, guided only by "whether legalization of the road is in the public interest." ORS 368.216(1). If the governing body chooses to complete the legalization, it must "enter an order" to that effect and cause the order to be recorded. ORS 368.216(1), (2); *see also* ORS 368.106(1). That order establishes that the road "exists as shown on the order legalizing" it. ORS 368.216(4)(b). The county governing body, however, must compensate the owner of any structure that is encroached upon by the legalized road, if that owner meets certain requirements. ORS 368.211. In short, the legalization process begins with uncertainty as to the establishment or location (or both) of a county road, then moves to a statutory process involving surveys and public hearings, and ends with either a decision not to legalize or a definitive order declaring the existence and location of the county road.

In the present case, the county initiated legalization proceedings by issuing an order declaring that the statutory prerequisites for undertaking the legalization process existed, calling for a survey, and setting the date for hearings on the matter after the survey was completed. After the hearings, at which plaintiff's counsel, among others, testified, the county court issued an order legalizing the road and locating it according to the recently completed survey. As noted above, plaintiff petitioned for a writ of review in circuit court, and the court affirmed, leading to this appeal.

The briefs before this court do not engage each other or frame the issues with clarity. In its opening brief, plaintiff appears to present three contentions. First, it argues that the county never legally established *any* road in 1879; therefore, the county lacked authority to undertake legalization proceedings, because the indisputable existence of a county road is a prerequisite to that process. In other words, according to plaintiff, the county could not fix the location of a road running from Prineville to Camp Creek—regardless of whether it was properly located on the north or the south side of the river—because no such road was lawfully established as a county road before the legalization process began. Second, plaintiff contends that, even if the county court had authority to determine whether the road running from Prineville to Camp Creek was lawfully established as a county road, the county court reached the wrong finding in that respect. And third, plaintiff argues that the county court erred by legalizing the wrong road; the original survey of Shotgun Road, conducted in 1879, established a road on the north side of the river, and the county legalized the road on the south side.

In response, the county points out several undisputed facts: First, it notes that, in 1879, the county conducted a survey to establish the location of a county road running southeast from the Crooked River bridge in Prineville to Camp Creek. Second, on May 6 of that year, the county governing body's journal shows the following entry:

"On this day came in for final hearing the report of the viewers heretofore appointed to view and survey a proposed county road, commencing at the east end of the bridge on

Crooked River in the town of Prineville; thence in an easterly direction to W. H. Anderson's; thence in a southeasterly direction to the Camp Creek Store and it appearing that said report had been publically read in open Court on two separate days of this term of Court, and no remonstrance or claim for damages having been filed thereto, and no objections being made thereto. Thereupon it was ordered by the Court that the prayer of the Petitioners herein be granted and that said road as viewed, surveyed and laid out be and the same is hereby established and declared a County road and that the said report, plat and survey be made of record in the journal of this Court."

Third, the survey was, by modern standards, crude and imprecise. And fourth, the establishment and location of the road have been challenged. In other words, the county argues that the undisputed events underlying this case make it exactly the kind of dispute to which the legalization process in ORS 368.201 to 368.221 applies.

In its reply brief, plaintiff explains its theory that the Wasco County court's attempt to create a county road in 1879 was fatally flawed because, when Wasco County established Shotgun Road in 1879, it failed to use proper procedures. In particular, according to plaintiff, it failed to provide proper notice. Plaintiff does not dispute the authenticity of the Wasco County court's 1879 journal entry declaring that the plan to establish Shotgun Road "had been publically read in open Court on two separate days of this term of Court," with "no remonstrance or claim for damages having been filed thereto, and no objections being made thereto." Rather, it cites a nineteenth century case for the proposition that there must be irrefutable evidence in the county's record to establish that proper notice was given, and that mere recitation in a county court's decree to that effect is insufficient. *State of Oregon v. Officer*, 4 Or 180, 184 (1871).

From the assorted pleadings and briefs, we distill the following inquiries presented in this case. First: Is the undisputed existence of a county road a prerequisite to the initiation of a county governing body's legalization process, or does the county governing body have the statutory authority to determine that the road it is legalizing is, in fact, a county

road, as part of the legalization process itself? If the governing body does have that authority, the second inquiry arises: Did the county court correctly exercise that authority here? In other words, did the county court correctly determine that, at some time before 2002, Shotgun Road was lawfully established as a county road? Third: Did the county court's order correctly locate Shotgun Road on the south side of Crooked River? For the reasons that follow, we conclude that the county court has the authority to establish the existence of a county road as part of the legalization process itself. That conclusion obviates the need to decide the remaining issues.

Under ORS 368.201(1), a county governing body may initiate proceedings to legalize a "county road" under several circumstances, including if, "through omission or defect, doubt exists as to the legal establishment or evidence of establishment of a public road." A "county road" is one type of "public road." ORS 368.001(1). Read literally, then, the statute could be seen as circular: as plaintiff argues, the existence of an established county road is the prerequisite for the legalization process, yet the purpose of the process is to establish a county road.

Viewing the relevant language in the current statute in the context of its predecessors explains how the potential circularity came into existence and allows us to avoid it. The earliest version of the current road legalization statute is as old as the state. On June 4, 1859, the first Oregon Legislative Assembly approved "An Act to Legalize Certain Roads." That act provided:

> "Whereas; doubts exist as to the legality of roads in many parts of this State, on account of such roads not being surveyed, or of some imperfections of the county commissioners' court, therefore
>
> "Section 1: *Be it enacted by the Legislative Assembly of the State of Oregon,* That all Territorial, State, and county roads that have been laid out, surveyed or not surveyed, by order of the board of county commissioners, or act of the Legislature, and have not been altered or vacated by act of the Legislative Assembly, or by order of the boards of county commissioners, shall be, and the same are hearby declared legal roads.

"Sec. 2. *And be it further enacted*, That any imperfect or informal records of the roads in the county commissioners' court, shall be overlooked, and such imperfections or informality shall not destroy or impair the validity of said roads.

"Sec. 3. As many persons are refusing to perform labor on roads, owing to the doubted legality, and as the said labor is needed very much at the present time, and to prevent litigation, this act shall take effect from the time of its passage."

Laws of the State of Oregon, First Extra Session (1859), p 35 (emphases in original). This earliest version of the road legalization statute declares without ambiguity that one of its purposes is to guarantee that roads established by county courts are lawful county roads even if the process of establishment was imperfect. Under this original statute, then, it is clear that the existence of a county road, the establishment of which was procedurally perfect, was not a prerequisite to the legalization process; indeed, the process was designed to retroactively perfect the establishment.

The original legalization statute was reformulated in 1917, when the legislature enacted a comprehensive statute governing county roads, General Laws of Oregon, chapter 295, section 33 (1917), and remained basically unchanged through 1947, at which point it stated:

"Where by reason of the loss or destruction of the field notes of the original survey, or in case of defective survey or record, or in case of such numerous alterations of any county road since the original location and survey that its location cannot be accurately defined by the papers on file in the proper county clerk's or county surveyor's offices, or *where, through some omission or defect, doubts may exist as to the legal establishment or evidence of establishment of any county road,* * * * the county court of the proper county may, if they deem it necessary, order *such county road,* or any part thereof, used and traveled by the public, to be surveyed or resurveyed, as the case may be, platted and recorded as hereinafter provided."

Or Laws 1947, ch 419, § 1 (emphases added). Although not as artfully drafted as it might be, the 1947 statute does not present the logical difficulty that the current statute does.

Rather, it states that, if (among other circumstances) there are doubts about the location or legal establishment of a county road, the county court may undertake the legalization process for "*such* county road." The word "such" indicates unambiguously that the "county roads" upon which the legalization process (surveying or resurveying, platting, and recording) may be applied are the ones already mentioned, including those about whose establishment there exist doubts. Thus, we have no reason to believe that, between 1859 and 1947, the underlying purpose of road legalization changed; rather, it remained a process for firmly establishing the legality, as county roads, of roads whose location or establishment was doubtful.

The 1947 statute remained in effect until 1953, when it was codified as follows:

"The county court of the proper county may, if it deems it necessary, order *a county road* or any part thereof used and traveled by the public to be surveyed or resurveyed, platted and recorded as provided in ORS 368.590 to 368.610, *where*:

"(1) By reason of loss or destruction of the field notes of the original survey, defective survey or record of such numerous alterations of any county road since the original location and survey that its location cannot be accurately defined by the papers on file in the proper county clerk's or county surveyor's offices; [or]

"(2) *Doubts exist as to the legal establishment of any county road, through some omission or defect*[.]"

*Former* ORS 368.585 (1953), *repealed by* Or Laws 1981, ch 153, § 79 (emphases added). This version of the statute has the same confusing potential for circularity that persists in the current statute, ORS 368.201, unchanged since its enactment in 1981, Oregon Laws 1981, chapter 153, section 21, which, it will be recalled, provides:

"A county governing body may initiate proceedings to legalize a *county road* under ORS 368.201 to 368.221 if any of the following conditions exist:

"(1) If, *through omission or defect, doubt exists as to the legal establishment or evidence of establishment of a public road*[.]"

(Emphases added.) The supposed circularity problem—stating that the process of establishing a road as a county road cannot be undertaken unless the road is already a county road—was introduced between 1951 and 1953. In 1953, the legislature inverted the order of the clauses, putting the authorization to legalize a county road before, instead of after, listing circumstances under which that authorization could be executed and, more significantly, excising the word "such." It would therefore appear that the key to clarifying the statute lies in discovering why the legislature eliminated the clarity in the first instance. In other words, what was the legislature's intention in changing a statute that clearly authorized county governing bodies to legalize roads whose status as county roads was dubious, into a statute that appeared to authorize county governing bodies to legalize only those roads that were already county roads?

 In fact, the legislature had no intentions whatsoever; the legislature did not make the changes in 1953. The changes were part of a codification process authorized by the legislature and carried out by a "statute revision council" consisting of seven members appointed by the governor, only two of whom were legislators. Or Laws 1949, ch 317, § 1. The council's charge was "to clarify, simplify, classify, arrange, coordinate, codify and revise the laws of this state now in force," with the limitation that it

> "*shall not alter the sense, meaning or effect of any act,* but, within such limitations, may correct the grammar, punctuation, spelling and form thereof, employ standard nomenclatures, renumber sections and parts of sections of the acts, rearrange sections, subsections, and paragraphs, * * * and correct manifest clerical or typographical errors, and generally revise, coordinate, correlate, clarify and simplify the statutory law of this state."

Or Laws 1949, ch 317, § 3 (emphasis added). We therefore conclude that whatever circularity is embedded in the current statutory language does not reflect the legislature's intention. That intention is manifest in the last version of the language that the legislature itself enacted before codification by the "statute revision council": county governing boards have the authority to legalize county roads whose status as such is doubted. A preexisting county road is not a

prerequisite to a county governing body initiating the legalization process. That process, as the legalization statutes themselves indicate, transforms roads that may or may not be lawfully established county roads (due either to a defective establishment process or a mislocation) into roads that are conclusively and indisputably county roads.

Plaintiff also argues that, even if the county court had authority to legalize Shotgun Road, it misapplied that authority by reaching findings of fact that are not supported by substantial evidence. In particular, plaintiff contends that there is insufficient evidence to support the finding that Wasco County complied with the notice requirements in 1879, thereby establishing that Shotgun Road was lawfully established, and that there is insufficient evidence that the road that the county attempted to establish at that time ran on the south side of the Crooked River.

Plaintiff's contentions are misguided. The purpose of the legalization process is not to determine whether a county road was lawfully established or where it originally ran; the purpose is to "legalize" a road by eliminating doubt concerning its establishment and location. In other words, the purpose of legalization was originally, and has remained, not to resolve competing factual accounts of how and where a road was or was not established, but to remove doubt about establishment when, due to omissions or defects in the establishment process, doubts as to legality exist; to set a location when, due to alterations, defective surveys, or lost surveys, the original "location of the road cannot be accurately determined"; and to conform a road as traveled for 10 years or more to the road as described in county records. ORS 368.201. Put another way, legalization allows counties to establish roads despite *"omissions"* in the original establishment process and to set locations when original locations *"cannot* be accurately determined." *Id.* (emphasis added). Those purposes are distinct from (and more robust than) determining whether omissions have occurred and where a road was originally located. *See Ungars' Co. v. Lincoln County*, 5 Or App 270, 275, 483 P2d 81 (1971) ("The very purpose of the road legalization statutes is to remedy [discrepancies between the road as surveyed and the road as traveled] by resurveying the existing road and conforming the

official records to accurately reflect the true course of the road.").

Thus, although "any person" can present information to the governing body, ORS 368.206(2), and that body must "consider" that information, ORS 368.216(1), no statute requires the county governing body to undertake a quasi-judicial process, hearing and weighing evidence to determine what did or did not occur in the past and reaching an "on the record" decision.[1] Rather, the statute requires the governing body only to order a new survey, ORS 368.206(1), and to announce a quasi-legislative decision: "After considering matters presented in a proceeding to legalize a road * * *, a county governing body shall *determine whether legalization of the road is in the public interest* and shall enter an order abandoning or completing the legalization procedures on the road." ORS 368.216(1) (emphasis added). Plaintiff does not assert that the county court's determinations are *not* in the public interest, and, in any event, such an assertion would not be reviewable under the writ of review. *Strawberry Hill 4 Wheelers v. Board of Comm.*, 287 Or 591, 602-04, 601 P2d 769 (1979).

In sum, we hold that, under the legalization statutes, the Crook County Court lawfully exercised its statutory authority in issuing the order establishing Shotgun Road as a Crook County road running, as described in that order, along the south side of Crooked River. The circuit court did not err.[2]

Affirmed.

---

[1] There may be circumstances in which the governing body will need to determine whether any of the actual prerequisites for legalization specified in ORS 368.201—doubtful establishment, impossibility of determining location, or 10 years or more of use—exist. Here, doubtful establishment is conceded.

[2] Plaintiff makes a cursory argument that the county court violated the Takings Clause of the Fifth Amendment to the United States Constitution ("nor shall private property be taken for public use, without just compensation") and the analogous clause in Article I, section 18, of the Oregon Constitution ("Private property shall not be taken for public use * * * without just compensation."). The argument, however, is based on the premise that the county court's action was unconstitutional because it was unlawful. We have rejected that premise. Plaintiff makes no argument that it is entitled to compensation for the *lawful* taking of plaintiff's property, and we do not address that issue. *But see* ORS 368.211 (requiring county governing body to provide limited compensation to qualified applicants).