Argued and submitted October 29, 2019, reversed and remanded May 5, 2021

Elisabeth HERNANDEZ,
*Plaintiff-Appellant,*

*v.*

CATHOLIC HEALTH INITIATIVES et al.,
*Defendants,*
*and*

REED GROUP, LTD.,
a corporation of Colorado;
and Reed Group Management, LLC,
*Defendants-Respondents.*

Douglas County Circuit Court
17CV11777; A166808

490 P3d 166

Plaintiff injured her back at work. After she was terminated from her employment, she sued defendants Reed Group Management, LLC and Reed Group, Ltd. for, among other things, aiding and abetting her employer in unlawful employment practices. ORS 659A.030(1)(g). Defendants moved to dismiss, contending that ORS 659A.030(1)(g) prohibits only employers and employees from aiding or abetting unlawful employment practices. Plaintiff argued that the statute prohibits "any person" from such practices. The trial court agreed with defendants and dismissed them from the case. Plaintiff appeals and renews her arguments from below. *Held*: The trial court erred in dismissing defendants. Anyone qualifying as a "person" under ORS 659A.001(9) may be an aider or abettor of an unlawful employment practice in a way that subjects them to liability under ORS 659A.030(1)(g).

Reversed and remanded.

Kathleen E. Johnson, Judge.

Richard B. Myers argued the cause and filed the briefs for appellant.

Sarah N. Turner, Washington, argued the cause for respondents. Also on the brief was Gordon Rees Scully Mansukhani, LLP, Washington.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief *amicus curiae* for State of Oregon, Bureau of Labor and Industries.

Cody Hoesly and Larkins Vacura Kayser LLP filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Powers, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

ORS 659A.030(1)(g) makes aiding and abetting an unlawful employment practice an unlawful employment practice in and of itself. That much is clear. Not clear is the scope of the universe of potential aiders and abettors. Can "any person" be an aider or abettor, as plaintiff Hernandez argues? Or is it only employers and employees who can be aiders and abettors, as defendants Reed Group Management, LLC, and Reed Group, Ltd., argue? Aiming to clarify, acting to opacify, a 1953 housekeeping revision made the text of the statute ambiguous on the point. The context, though, resolves the question in favor of plaintiff. Because the trial court concluded otherwise, we reverse and remand.

This case is before us on plaintiff's appeal of a limited judgment of dismissal entered after the trial court granted defendants' motion to dismiss under ORCP 21 A(8). We review for legal error the trial court's grant of an ORCP 21 A(8) motion. *Chang v. Chun*, 305 Or App 144, 147, 470 P3d 410 (2020). In conducting our review, "we accept as true the allegations in the complaint, and any reasonable inferences that can be drawn from those allegations, viewing them in the light most favorable to the nonmoving party," in this case, plaintiff. *Id.* In accordance with that standard, we state the facts about the parties' underlying dispute as plaintiff alleges them to be.

Plaintiff is a registered nurse. Defendants Catholic Health Initiatives and Mercy Medical Center, Inc., (collectively, Mercy Health) hired her to work at a hospital they operated. Defendants administer Mercy Health's employee benefit programs.

While lifting a patient at work, plaintiff injured her back. She sought medical treatment for the injury, and her treating physician filed a workers' compensation claim on her behalf. Mercy Health's workers' compensation insurer accepted that claim.

In treating the injury, plaintiff's physician placed her on work restrictions. Those restrictions did not allow her to perform her regular work duties for several months. Her physician then modified her restrictions. Around the same

time, plaintiff became aware of several vacant positions that were consistent with her modified restrictions and requested that Mercy Health employ her in one of those positions. Mercy Health refused. Then, about two months later, Mercy Health notified plaintiff that she would be "administratively separated" from her employment because she had exhausted her medical leave. On the same day, defendants also notified plaintiff that she had exhausted her medical leave under Oregon law.

Plaintiff again requested that Mercy Health reemploy her or otherwise accommodate her injury. As an alternative, she requested additional medical leave. She also contacted defendants to request medical leave but one of defendants' representatives told her that she was not eligible for medical leave because her employment had been terminated.

This action followed. Plaintiff alleges (among other things) that Mercy Health committed unlawful employment practices by (1) denying reemployment, in violation of ORS 659A.046; (2) discriminating against plaintiff because of a disability, in violation of ORS 659A.112; and (3) interfering with her protected medical leave, in violation of ORS 659A.183. Plaintiff additionally alleges that defendants unlawfully aided and abetted those alleged unlawful employment practices themselves, in violation of ORS 659A.030(1)(g) by mishandling her medical leave benefits in six different ways.

Defendants moved to dismiss the aid-and-abet claim against them. They contended that ORS 659A.030 (1)(g) applies exclusively to conduct by employers and employees and does not extend to conduct by third parties to the employment relationship, even if that conduct, in fact, aids and abets an unlawful employment practice. In support of that argument, they relied on a host of decisions by the United States District Court for the District of Oregon interpreting ORS 659A.030(1)(g) in that way. Plaintiff argued that the text of ORS 659A.030(1)(g), in context, demonstrates that it applies to anyone, including third parties to an employment relationship, that aids or abets an unlawful employment practice. The trial court agreed

with defendants, and entered a limited judgment dismissing them from the case. Plaintiff appealed.

On appeal, the parties reiterate the arguments they made to the trial court. In addition, the Oregon Trial Lawyers Association (OTLA) and the Oregon Bureau of Labor and Industries (BOLI) have submitted *amicus curiae* briefs. OTLA's brief supplies a detailed tracing of the history of ORS 659A.030(1)(g), including copies of primary source materials, and BOLI's brief notes its historical understanding and practice in enforcing ORS 659A.030(1)(g), both of which, they argue, demonstrate that the legislature intended that aid-and-abet liability would not be limited to employers and employees.

The question before us, then, is straightforward: Does ORS 659A.030(1)(g) prohibit everyone from aiding and abetting unlawful employment practices, or just employers and employees? The answer, thanks to a housekeeping hiccup, is not.

As ever, in ascertaining that answer, our role and our goal is to give effect to the intentions of the legislature that enacted the statute. *State v. McQueen*, 307 Or App 540, 545, 478 P3d 581 (2020). We do so by examining the statutory "text, in context, and, where appropriate, legislative history and relevant canons of construction." *Chase and Chase*, 354 Or 776, 780, 323 P3d 266 (2014). Context includes other provisions of the same statute, other related statutes, other statutes enacted at the same time, and "prior versions of the same statute." *Northwest Natural Gas Co. v. City of Gresham*, 359 Or 309, 322, 374 P3d 829 (2016). That examination, as we explain, demonstrates that, in enacting ORS 659A.030(1)(g), the legislature intended to prohibit the aiding and abetting of unlawful employment practices by anyone, not only employers and employees.

We start with text. ORS 659A.030(1)(g) states that "[i]t is an unlawful employment practice *** [f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." The simple act of reading reveals something wrong in the crafting. At war with itself, the text suggests that it applies to everyone ("any

person") and, simultaneously, that it applies only to employers and employees ("whether an employer or an employee"). The words, and the impossibility they conjure, raise only questions: Why refer to any person if the legislature meant to refer only to employers and employees? Why refer to employers and employees if the legislature meant to refer to any person? Did the legislature think that the universe of "any person[s]" coincided with the universe of employers and employees? The sentence, as written, is more mystery than mandate.

Although the statutory wording does not communicate the legislature's intentions with clarity, statutory context does. The statutory definition of the word "person," the other statutory provisions identifying unlawful employment practices, and the enactment history of ORS 659A.030(1)(g) demonstrate that the legislature intended to prohibit aiding and abetting unlawful employment practices by "any person" at all, not just employers and employees.

As for what "person" means for purposes of ORS 659A.030, ORS 659A.001(9) defines it to include:

"(a) One or more individuals, partnerships, associations, labor organizations, limited liability companies, joint stock companies, corporations, legal representatives, trustees, trustees in bankruptcy or receivers.

"(b) A public body as defined in ORS 30.260."

That broad definition is one we are "obliged to apply," *McLaughlin v. Wilson*, 365 Or 535, 540, 449 P3d 492 (2019), and it is one that suggests that the legislature did not intend the prohibition on aiding and abetting by "any person" to be limited to employers and employees. That definition identifies the people and entities encompassed without reference to status in an employment relationship. And some of the identified "person[s]" are ones not often thought of as employers or employees, such as "legal representatives, trustees, trustees in bankruptcy or receivers." ORS 659A.001(9)(a). This broad definition of the term "person" indicates that the legislature generally did not view "person[s]" as limited to employers and employees. *See generally McLaughlin*, 365 Or at 539-49 (concluding that term "any person" in ORS 659A.030(1)(f) was not limited to employers and employees,

in view of statutory definition of "person" contained in ORS 659A.010(9) and the legislature's use of the term "any").[1]

The other provisions of ORS 659A.030(1) point the same way. ORS 659A.030(1)(a) and (b) prohibit specified conduct by "an employer." ORS 659A.030(1)(c) prohibits specified conduct by "a labor organization." ORS 659A.030(1)(d) prohibits specified conduct by "any employer or employment agency." ORS 659A.030(1)(e) prohibits specified conduct by "an employment agency." And ORS 659A.030(1)(f), similar to ORS 659A.030(1)(g), prohibits certain conduct by "any person," although, unlike ORS 659A.030(1)(g), the reference to "any person" is not followed by the clause "whether an employer or an employee." That each of ORS 659A.030(1)(a) through (e) identifies with specificity who is governed by the provision tends to suggest that, when the legislature intended for a provision to apply to a limited set of persons or entities, it said so explicitly. Said another way, given the structure of the preceding provisions of ORS 659A.030(1), we think it likely that, had the legislature intended to prohibit aiding and abetting by employers and employees only, it would have worded ORS 659A.030(1)(g) in parallel to the prior provisions, like this: "It is an unlawful employment practice *** for any employer or employee to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."

Of course, we still must account for the phrase "whether an employer or an employee." If "any person" means simply "any person," what function does that phrase serve? The enactment history tells us: It is a relic of a once clear phrase emphasizing that the legislature meant "any person" to mean anyone at all.

The legislature first enacted what is now ORS 659A.030(1)(g) in 1949. Or Laws 1949, ch 221, § 5(5). As enacted, the provision contained an "or not" that made clear the legislature's intention was to broadly prohibit "any person" from aiding and abetting an unlawful employment practice: "For the purposes of this act it shall be an unlawful employment practice *** [f]or any person, whether an

---

[1] In *McLaughlin*, the Supreme Court noted, but did not resolve, the interpretive question now before us. 365 Or at 543.

employer or employe, *or not*, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act or to attempt to do so." Or Laws 1949, ch 221, § 5(5) (emphasis added). In the same act, the legislature defined the term "person" to include "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy or receivers." Or Laws 1949, ch 221, § 4(1).

        As the parties agree, as originally written with the "or not," the provision unambiguously prohibited aiding and abetting by anyone, not just employers and employees. The purpose of the phrase "whether an employer or an employe, or not" was, it seems, to emphasize the legislature's intention that the prohibition on aiding and abetting apply broadly, without exception. Although no legislative history appears to have been maintained, contemporaneous newspaper articles reported that the provisions of Oregon Laws 1949, chapter 221, were drawn from similar acts in New York and New Jersey. *House Votes Senate-Approved Fair Employment Practices Act*, Oregon Statesman at 20 (Mar 20, 1949) (reporting that, "When approved by the governor, Orego[n] will become the sixth state to adopt the act. The others are New York, New Jersey, Connecticut, Massachusetts and Washington."); Ralph Watson, *Job Practices Bill Ready for Senate Action*, Oregon Statesman at 6 (Feb 6, 1949) (explaining that act was drawn primarily from New York and New Jersey acts). The New York and New Jersey analogs to what is now ORS 659A.030(1)(g) contained the same phrase (although New York and New Jersey rejected the single-e spelling of "employee" from the start). 1945 NY Laws 460-61; 1945 NJ Laws 594. The report of the commission that prepared and recommended the New York act to the New York legislature explains that the wording of the provision from which ORS 659A.030(1)(g) was lifted was designed to ensure a universal prohibition on aiding and abetting unlawful employment practices by an individual or entity:

> "The language of Subdivision 5 is designed to bring within the orbit of the bill all persons, no matter what their status, who aid or abet any of the forbidden practices of discrimination or who attempt to do so; and also to furnish protection

to all persons, whether employers, labor organizations or employment agencies, who find themselves subjected from any source to compulsion or coercion to adopt any forbidden employment practices. Thus, other employees who coerce or attempt to coerce an employer into unlawful employment practices are themselves guilty of acts rendered unlawful by this bill."

Rep of NY St Temp Comm'n Against Discrimination, 1945 NY Legis Doc No 6 at 31 (1945).

Although Oregon's removal of the "or not" has made what was once a clear statute unclear, the enactment history shows that the extraction of the phrase did not signal a change in the legislature's intention about the proper scope of aid-or-abet liability. That is because it shows that the statutory revision council, not the legislature itself, removed the "or not" as part of the comprehensive nonsubstantive revision of Oregon laws that resulted in the Oregon Revised Statutes as we know them today. In other words, the removal was not the product of a policy choice by the legislature.

As noted, the provision that is now contained in the Oregon Revised Statutes was enacted by the legislature in 1949. Or Laws 1949, ch 221, § 5(5). Also in 1949, the legislature created the statute revision council to conduct a major cleanup of the Oregon laws. The statute revision council was empowered "to clarify, simplify, classify, arrange, coordinate, codify and revise the laws of this state." Or Laws 1949, ch 317, § 3. Despite the breadth of its power to revise the laws of the state, the council was not authorized to change the law substantively: "[The council] shall not alter the sense, meaning or effect of any act, but, within such limitations, may correct the grammar, punctuation, spelling and form thereof," as well as other, nonsubstantive revisions. *Id.*; *State of Oregon v. Holland*, 202 Or 656, 659-65, 277 P2d 386 (1954) (explaining the nonsubstantive nature of the 1953 revision and how it represented a continuation of existing law).

The statutory revision counsel completed its work and presented its proposed revision to the legislature in 1953, and the 1953 legislature adopted the revision in full.

Oregon Revised Statutes, Preface vi (1953); Charles G. Howard, *The Oregon Revised Statutes*, 33 Or L Rev 58, 59 (1953) (explaining that the proposed revisions were submitted to the 1953 legislature "in the form of a bill providing for their enactment into law," and that the bill "was passed without amendment"). As a result of the revision, Or Laws 1949, ch 221, § 5(5), became ORS 659.030(5) (1953),[2] with one exception: the phrase "whether an employer or an employe, or not," became "whether an employer or an employe" minus the "or not." Although the reviser's notes to then-chapter 659 gave no explanation for the ambiguity-creating change, it appears likely that it was to eliminate words viewed by the revision council as unnecessary. *See* Legislative History, Reviser's Notes, and Annotations for Chapters 171 to 783 of the Oregon Revised Statutes, 1382 (1953) (providing no explanation for alteration to Or Laws 1949, ch 221, § 5); *see also* Howard, 33 Or L Rev at 59 (noting that "[i]t is estimated that over 360,000 words have been eliminated from the statute text," mostly because the words were unnecessary or duplicated; reiterating that "[t]here has been revision in *form*, not in *substance*" (emphases in original)).

The revision was intended to improve the clarity of Oregon law, but the legislature anticipated imperfection. Instructing on how to interpret the revised code, it explained that the 1953 revised statutes "are considered as substituted in a continuing way for the provisions of the prior statute laws repealed" as a result of the enactment of the revision. ORS 174.550; *see* ORS 174.510(1) (describing 1953 revision); ORS 174.520 (repealing laws replaced by revision). Although "the statute laws" resulting from the revisions "speak for themselves," the legislature directed that, "in cases *** of an ambiguity in a section[,] *** reference may be had to the Acts from which the section[] [is] derived *** for the purpose of resolving the ambiguity." ORS 174.530.

That directive is dispositive here. When the 1953 revision process has introduced an ambiguity to a statute, we ascertain the legislature's intention by looking to "the last version of the language that the legislature itself enacted before codification by the statute revision council."

---

[2] In 2001, ORS 659.030 was renumbered to ORS 659A.030.

*Shotgun Creek Ranch, LLC v. Crook County*, 219 Or App 375, 384, 182 P3d 312, *rev den*, 345 Or 158 (2008) (internal quotation marks omitted). ORS 659A.030(1)(g) is ambiguous because of words omitted during the 1953 revision. The legislature meant it to be a continuation of prior law and instructed us to refer to prior law to resolve ambiguities. The prior law, with its inclusion of "or not," is unambiguous as to its scope: It applies broadly to anyone falling within the definition of person, regardless of whether that person is an employer, employee, or otherwise. That means that, under ORS 659A.030(1)(g), third parties to employment relationships can be liable for aiding or abetting an unlawful employment practice.

This conclusion is consistent with how BOLI has long interpreted and enforced ORS 659A.030(1)(g). *See In the Matter of Alpine Meadows Landscape*, 19 BOLI 191, 213-14 (2000); *In the Matter of Portland Electric & Plumbing Co.*, 4 BOLI 82, 103-04 (1983); *In the Matter of Arden-Mayfair, Inc.*, 2 BOLI 187, 190 (1981). Although we do not defer to BOLI's interpretation, *Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 687-88, 318 P3d 735 (2014), we think it worth noting that our independent consideration of the text and context of ORS 659A.030(1)(g) confirms that BOLI's longstanding understanding of the statute is in line with what the legislature intended. The United States District Court for the District of Oregon, we recognize, has concluded otherwise, however, "we are not bound by any federal court's interpretation of an Oregon statute." *Burley v. Clackamas County*, 298 Or App 462, 467, 446 P3d 564, *rev den*, 365 Or 721 (2019). It appears, in any event, that the district court may not have had the extensive information about ORS 659A.030(1)(g)'s enactment history and the role of the statute revision council with which we have been supplied, making it all that much more difficult for it to discern the legislature's intentions from the confounding text produced by the statute revision council's word-reduction efforts.

In sum, aid-or-abet liability under ORS 659A.030 (1)(g) is not limited to employers and employees. Anyone qualifying as a "person" under ORS 659A.001(9) may be

an aider or abettor of an unlawful employment practice in a way that subjects them to liability under ORS 659A.030 (1)(g).

Reversed and remanded.