766                    July 9, 2025                    No. 617

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Steven Anthony AGUIRRE,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
*Respondent-Respondent.*

Curry County Circuit Court
24CV17026; A185012

Jesse C. Margolis, Judge.

Argued and submitted May 28, 2025.

David C. Johnston argued the cause for appellant. Also on the briefs was Law Office of David C. Johnston.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner appeals a general judgment of dismissal following the grant of the state's motion to dismiss his petition for compensation for wrongful conviction, ORS 30.657. Petitioner argues that the trial court erroneously interpreted ORS 30.657 to preclude relief when a person engages in the physical acts forming the basis of a conviction. We review for legal error, *Hernandez v. Catholic Health Initiatives*, 311 Or App 70, 72, 490 P3d 166 (2021), and affirm.

The following facts are taken from petitioner's successful appeal:

> "Officer Aryanfard saw defendant and another man having an altercation, in which defendant appeared to be the aggressor. When defendant did not follow Aryanfard's instructions to stop, Aryanfard attempted to restrain him by grabbing his shoulders from behind. Defendant continued trying to fight the other man and tried to escape Aryanfard's grasp by twisting his shoulders. Then, defendant 'thrust' his shoulder backward into Aryanfard's collarbone, causing her to fall to one knee. The strike did not cause pain to her collarbone, but her knee was injured from hitting the pavement. Aryanfard quickly managed to regain her footing and detain defendant."

*State v. Aguirre*, 326 Or App 552, 553 (2023) (nonprecedential memorandum opinion). Petitioner was convicted, following a bench trial, of assaulting a public safety officer, ORS 163.208, and was sentenced to 18 months in prison and two years of post-prison supervision. We reversed and remanded that judgment of conviction, however, because the trial court sitting as factfinder failed to consider whether plaintiff had a culpable mental state as to the element of resulting physical injury, a failure that constituted plain error. *Id*. at 555; *see also State v. Owen*, 369 Or 288, 322, 505 P3d 953 (2022) (to be guilty of second-degree assault, a defendant must knowingly engage in assaultive conduct and be at least criminally negligent with respect to the resulting injury). On remand, the state moved to dismiss the assaulting-a-public-safety-officer charge, and the court dismissed the case. As a result of his conviction, petitioner spent nearly a year incarcerated and an additional 12 months on post-prison supervision.

Petitioner then petitioned the court under ORS 30.657 for compensation for his "wrongful conviction." That statute allows a person to be compensated, in certain circumstances, for a wrongful felony conviction and imprisonment. One of the requirements for compensation is that the person

> "did not commit the crime or crimes for which the person was convicted and was not an accessory or accomplice to or otherwise involved in the acts that were the basis of the conviction."

ORS 30.657(1)(c). Petitioner argued that the text, context, and legislative history of ORS 30.657(1)(c) all demonstrated that the legislature intended the word "conviction" to only refer to the formal entry of judgment (*e.g.*, the court clerk entering the judgment in the register). Thus, according to petitioner, the legislature intended to prohibit recovery for persons involved in acts related to that formal entry, such as influencing an officer of the court to enter a false entry of conviction.

The state moved to dismiss the petition for failing to state a claim, arguing that petitioner failed to allege that he was "not * * * otherwise involved in the acts that were the basis of the conviction" as the statute required. At a hearing on that motion, the trial court pressed petitioner's counsel on whether he could, in good faith, allege that petitioner had no involvement in the acts leading up to petitioner's conviction, and counsel for petitioner admitted that he could not:

> "THE COURT:   I'm not asking about that. I'm just asking if you could in good faith allege that he was not involved in those acts leading up to the conviction if the conviction— or those acts refer to the factual basis that was tried to the jury for the conviction.
>
> "* * * * *
>
> "[PETITIONER'S COUNSEL]:   If your question is can I allege—can I allege in good faith that [petitioner] was not at all involved in any of the acts that led to his arrest, then, no, I cannot allege that, but that's not, I believe, what the statute requires."

The trial court disagreed with petitioner's interpretation of the wrongful conviction statute, concluding that the

phrase "otherwise involved in the acts that were the basis of the conviction" referred to physical acts that formed the basis of the crime of conviction more broadly. The trial court dismissed the petition for failing to state a claim, because petitioner never alleged that he did not actually commit the acts that led to the police officer's injury.

On appeal, petitioner renews his argument that the trial court misinterpreted the statute but frames it somewhat differently. Specifically, petitioner argues that the court's interpretation reads an "actual innocence" requirement into the statute that the legislature never intended. Petitioner also argues that the requirement that he not be involved in "the acts that were the basis of the conviction" does not refer to the acts leading up to his *arrest* because, according to petitioner, the legislature intended that phrase to encompass both the physical acts and their accompanying mental state. The state contends that the text, context, and legislative history of the statute all indicate that the legislature intended for the statute to have a narrow reach and preclude compensation for persons involved with the physical acts that formed the basis of the crime of conviction, even if the conviction was later reversed on appeal. For reasons that follow, we agree with the state.

As always, when interpreting a statute, "our role and our goal is to give effect to the intentions of the legislature that enacted the statute." *Hernandez*, 311 Or App at 74. "We do so by examining the statutory 'text, in context, and, where appropriate, legislative history and relevant canons of construction.'" *Id.* (quoting *Chase and Chase*, 354 Or 776, 780, 323 P3d 266 (2014)).

We begin with "an examination of [the] text and context" of the statute. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). The wrongful conviction statute, ORS 30.657, allows a person to "petition for compensation for wrongful conviction against the state," provided that they satisfy several requirements:

"(a)   The person was convicted of one or more felonies and subsequently imprisoned as a result of the conviction or convictions;

"(b)(A)    The person's conviction was reversed or vacated and either the charges were dismissed or on retrial the person was found not guilty; or

"(B)    The person received a grant of gubernatorial pardon;

"(c)    The person did not commit the crime or crimes for which the person was convicted and was not an accessory or accomplice to *or otherwise involved in the acts that were the basis of the conviction*; and

"(d)    The person did not commit perjury, fabricate evidence or by the person's own conduct cause or bring about the conviction. A confession or admission later found to be false or a guilty plea does not constitute committing perjury, fabricating evidence or causing or bringing about the conviction under this paragraph."

ORS 30.657(1) (emphasis added).

The relevant text is: "otherwise involved in the acts that were the basis of the conviction." The word "act" has several dictionary definitions, but here likely means "a thing done or being done," or "something done by a person pursuant to his or her volition." *Webster's Third New Int'l Dictionary* 20 (unabridged ed 2002); *see also State v. Grant*, 339 Or App 612, 617, ___ P3d ___ (2025) ("When the legislature does not expressly define a word, dictionary definitions can be useful."). The common meaning of "basis" is "something that supports or sustains anything immaterial." *Webster's* at 182. And "conviction" is defined as either "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty," or "[t]he judgment (as by a jury verdict) that a person is guilty of a crime." *Black's Law Dictionary* 400 (10th ed 2014); *see also State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (explaining that we consult legal dictionaries "as an aid in determining" established definitions of legal terms). Putting that all together, and as a purely textual matter, the "acts that were the basis of the conviction" would be the bodily movements that support a finding of guilt, *i.e.*, the physical acts constituting the conduct of the crime of conviction.

As to context, in a criminal statute the word "act" has a specific legal definition: "a bodily movement." ORS

161.085(1); *see also State v. Klein*, 352 Or 302, 309, 283 P3d 350, 354 (2012) (a statute's context includes "related statutes"). An act is the building block for criminal liability, which requires, at minimum, "conduct which includes a voluntary *act* or the omission to perform an *act* which the person is capable of performing." ORS 161.095(1) (emphases added). Conduct itself is statutorily defined as "an act or omission and its accompanying mental state." ORS 161.085(4). With that context, petitioner's interpretation—that the legislature intended "acts" in the wrongful conviction statute to signify physical acts along with their accompanying mental state—presents challenges. In a criminal context, acts are different from their mental state and, when combined (as petitioner contends they are here), they comprise "conduct." What petitioner is describing, then, fits the definition of conduct—not acts.

In addition to the context provided by Oregon's criminal laws, other portions of the wrongful-conviction statute itself provide support for a narrow interpretation. *See State v. Febuary*, 361 Or 544, 550, 396 P3d 894 (2017) ("Our consideration of context includes the structure of the statute as a whole."). ORS 30.657(1)(c) requires proof that "[t]he person did not commit the crime or crimes for which the person was convicted" *and* "was not an accessory or accomplice to or otherwise involved in the acts that were the basis of the conviction."

As mentioned, to commit a crime, a person must, at minimum, engage in statutorily proscribed conduct, which itself consists of an act (*i.e.*, a bodily movement) *and* its accompanying culpable mental state. The statute, however, requires not only that the person have not committed the crime, it requires that the person not have otherwise been involved with the criminal acts at all, without any discussion of mental state. Had the legislature intended for the statute to provide relief for people who were *legally* innocent—people, like petitioner, who committed harmful *acts* but may have lacked the statutorily required awareness of the harm their acts could cause, so as to have not committed a *crime*—it would not have included additional language specifically related to the acts of the crime. *See* ORS 174.010

(as a general rule, we will adopt the construction "as will give effect to all" provisions of a statute); *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("[W]e assume that the legislature did not intend any portion of its enactments to be meaningless surplusage."). That additional language means that the legislature wanted a petitioner to show something more than legal innocence—rather, a petitioner must show a lack of involvement with the physical acts the legislature has chosen to proscribe as part of the criminal conduct.

The legislative history of the wrongful conviction statute confirms that the legislature intended it to remedy a very specific harm. At a work session on Senate Bill (SB) 1584 (2022), the bill that would eventually be codified as ORS 30.657, multiple legislators attested that the bill's reach was intended to cover a narrow range of persons who were wrongfully convicted. Video Recording, Joint Committee on Ways and Means, Subcommittee on Public Safety, SB 1584, Feb 23, 2022, at 36:54-41:40 (Subcomm Hearing), https:// olis.oregonlegislature.gov/ (accessed July 2, 2025). For example, one sponsor of the bill, Senator Floyd Prozanski, explained that the law would only apply "to individuals who have been determined to be wrongfully convicted," and that the "easiest way to look at this" is, for example, cases involving "DNA evidence that comes in later after the conviction and it shows that the individual definitely was not the person that committed the crime." *Id.* at 39:40-40:08; *see also id.* at 40:48-40:55 (comments of Representative Jason Kropf explaining that new law would require "not just that it's a vacated [conviction] but there is basically a proving of innocence"); Testimony, Subcommittee on Public Safety, SB 1584, Feb 8, 2022 (statement of Janis C. Puracal, Executive Director, Forensic Justice Project) (noting that "[t]he bill was written to compensate individuals who are *factually* innocent" and "[t]he exoneree must prove that he/she/they did not commit the crime" (emphasis in original)).

The lawmakers also reiterated that the proposed law would only apply to a handful of exonerees. At one point, Representative Paul Evans asked about the narrow scope of the law:

> "At last count we're talking about thirteen to fifteen people if this was in the law now, compared with hundreds or thousands, correct? *This is a very small number of people* who were clearly treated wrongly before the law, there's no question in those cases, and it's just making right what needs to be right; that's a fair assessment?"

Subcomm Hearing at 37:29-37:49 (emphasis added). Senator Chris Gorsek, another sponsor of the bill, confirmed that Representative Evans was correct. *Id.* at 37:49-37:54; *see also id.* at 38:05-38:10 (comments from legislative staff that "the number right now that the proponents are saying [the law would affect] is somewhere around six total"). Petitioner's proposed interpretation, which would open the door to a large number of people, like petitioner, who committed the acts that constituted a crime of conviction, but whose conviction was reversed because of a legal error with the proceeding, goes against the clear legislative intent behind the law to limit relief to exonerees who are legally *and* factually innocent.

Affirmed.