590 June 17, 2026 No. 548

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

OREGON PUBLIC BROADCASTING,
*Plaintiff-Appellant,*

*v.*

OREGON DEPARTMENT OF CORRECTIONS,
*Defendant-Respondent.*

Marion County Circuit Court
22CV02493; A185546

Amy M. Queen, Judge.

Argued and submitted May 12, 2026.

Stephanie J. Grant argued the cause for appellant. Also on the briefs were Steven M. Wilker and Tonkon Torp LLP.

Kyleigh Gray, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

LAGESEN, C. J.

Reversed and remanded.

## LAGESEN, C. J.

This case arises under the Oregon Public Records Law (OPRL), ORS 192.311 to 192.431. At issue is whether public records prepared in the ordinary course of an agency's business, and not in connection with any sort of criminal investigation, qualify as "[i]nvestigatory information compiled for criminal law purposes" within the meaning of ORS 192.345(3), so as to make them conditionally exempt from disclosure, when those records are requested by law enforcement or prosecutors in connection with a criminal investigation or prosecution. Said another way, do public records otherwise subject to disclosure become exempt from disclosure simply because they have been provided to another agency investigating or prosecuting a crime? We conclude that the answer is no and, therefore, reverse and remand for the trial court to enter a declaration that comports with this decision.

By way of background, the OPRL "manifests a strong policy favoring the disclosure of public records." *Pace Consultants v. Roberts*, 297 Or 590, 594, 687 P2d 779 (1984); *see* ORS 192.314(1) ("Every person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.338, 192.345 and 192.355."). In light of this policy, "[a]ny exemption from disclosure under the Public Records Law must be *explicitly stated by statute* and not merely implied by the law." *Colby v. Gunson*, 224 Or App 666, 675, 199 P3d 350, 354 (2008) (emphasis added). Thus, under the OPRL, "disclosure is the rule," and "[e]xemptions from disclosure are to be narrowly construed." *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 37, 791 P2d 854 (1990). In the event an exemption's scope is ambiguous, we apply the "narrow construction" rule. *Colby*, 224 Or App at 676. "The 'narrow construction' rule means that, if there is a plausible construction of a statute favoring disclosure of public records, that is the construction that prevails." *Id*.

This case began when plaintiff Oregon Public Broadcasting (OPB) requested the inmate file for Jeremy Christian, who served time in the custody of defendant Oregon Department of Corrections (ODOC) from 2002

through 2010. OPB requested the file in 2019, shortly before Christian's trial on charges stemming from, among other things, Christian's act of stabbing three people on a Portland MAX train, killing two of them and seriously injuring the third. *See State v. Christian*, 333 Or App 815 (2024) (non-precedential memorandum opinion) (outlining the facts underlying the charges and, ultimately, convictions). ODOC denied OPB's request, claiming that the file was "[i]nvestigatory information compiled for criminal law purposes" exempt from disclosure under ORS 192.345(3). ODOC reasoned that the inmate file fell within the ORS 192.345(3) exemption because it had "compiled and provided copies of the records to criminal investigators as part of an on-going criminal investigation being conducted by law enforcement and the Multnomah County District Attorney's Office," notwithstanding that the file itself had been compiled years before the records in it had been requested by investigators.

OPB petitioned the Attorney General for review of ODOC's decision, as permitted by ORS 192.411(1). Citing the *Attorney General's Public Records and Meetings Manual*, the Attorney General denied the petition. The Attorney General reasoned that, "[a]lthough the records were not initially created for criminal law enforcement purposes, we long have held that the criminal investigatory information exemption applies to non-law-enforcement records that were originally created for ordinary business purposes but that are subsequently compiled or gathered in the course of a criminal investigation." The Attorney General also cited *John Doe Agency v. John Doe Corp.*, 493 US 146, 110 S Ct 471, 107 L Ed 2d 462 (1989), noting that the United States Supreme Court had interpreted "a nearly identical federal statute to extend to documents not originally created for criminal law enforcement purposes but later gathered as part of an investigation."

Thereafter, OPB initiated this proceeding under ORS 192.411(2) for declaratory and injunctive relief. Pertinent to the issue now before us, OPB requested that ODOC be enjoined from withholding Christian's inmate file, and that the court enter a declaration that "ODOC's practice of exempting public records under ORS 192.345(3), as reflected in its denial of OPB's Inmate File Request,

violates the OPRL" because "[w]here the custodian of public records did not compile the requested records for criminal law purposes, the subsequent compiling of the same records by a different agency for criminal law purposes does not transform the records held by the original custodian into investigatory information compiled for criminal law purposes."

ODOC subsequently provided the file, and the trial court dismissed the claim for injunctive relief as moot. The provision of the file did not, however, moot OPB's claim for declaratory relief, in view of ODOC's—and the Attorney General's—ongoing policy and practice of interpreting the ORS 192.345(3) exemption to apply to records that were not compiled for criminal law enforcement purposes when such records are provided in response to a subsequent investigatory demand by law enforcement or prosecutors.[1] *See Guard Publishing Co.*, 310 Or at 35 n 3 (explaining that where, as here, requested public records have been withheld pursuant to a claimed exemption, the subsequent provision of the requested records does not moot a request for declaratory relief regarding the scope of the exemption where the agency indicates that it has a policy or practice of interpreting the exemption the same way, and the parties continue to dispute the correctness of the agency's interpretation). Ultimately, the court entered the following declaration: "The Court declares that Oregon Department of Corrections correctly interprets the exemption found in ORS 192.345(3) as potentially applying to records it compiled for use in another agency's criminal investigation."

OPB appealed. On appeal, OPB assigns error to the trial court's (1) denial of OPB's requested declaration and (2) decision to enter the declaration that it did. OPB argues that

---

[1] The 2024 *Attorney General's Public Records and Meetings Manual* (which is the most recent version of the manual) takes the following position with respect to the exemption afforded by ORS 192.345(3):

"The criminal investigatory exemption applies not only to information generated through a criminal investigation, but also to information originally compiled for ordinary business purposes that is subsequently gathered in the course of an investigation. This means that even information in the custody of a non-law-enforcement agency may be exempt if it was subsequently gathered by a law enforcement agency[.]"

*Attorney General's Public Records and Meetings Manual* 48 (2024).

ORS 192.345(3), correctly construed, means that records that were compiled for reasons other than criminal investigatory purposes do not become "investigatory information compiled for criminal law purposes" by virtue of the fact that the records are subsequently provided to law enforcement or a prosecutor in connection with a criminal investigation or prosecution. As OPB construes the statute, such records must be produced in response to a public records request unless another exemption from disclosure applies. ODOC maintains, as it did below, that such records transform into "investigatory information compiled for criminal law purposes" once ODOC produces them in response to an investigative demand.

As an initial matter, we agree with OPB that the trial court erred in entering the declaration that it did. That is because the declaration that the court entered—stating that the exemption "potentially" applied to records compiled for use in another agency's investigation—did nothing to resolve the parties' clear-cut dispute about the scope of the exemption. Although a court no doubt has some degree of discretion in crafting a declaration to resolve a genuine dispute, the point of a declaratory judgment is to prevent wrongs from occurring by adjudicating the rights and responsibilities of the parties to the dispute. *Hale v. State of Oregon*, 259 Or App 379, 383, 314 P3d 345 (2013), *rev den*, 354 Or 840 (2014) (discussing the function of declaratory relief). In this instance, the trial court's declaration effectively stated a legal truism: that a statute could "potentially" apply to some circumstances. It did not resolve the parties' genuine dispute, which centers on whether the Attorney General's longstanding construction of ORS 192.345(3), as applied by ODOC in this instance, is correct.

We turn to the task of resolving this dispute. This case was resolved on cross-motions for summary judgment, and the underlying facts are not in dispute. At issue is the construction of ORS 192.345(3). Statutory construction questions are questions of law, making our review for legal error. *Pamplin Media Group v. City of Salem*, 293 Or App 755, 763, 429 P3d 1019 (2018). In construing a statute, "our role and our goal is to give effect to the intentions of the legislature

that enacted the statute." *Hernandez v. Catholic Health Initiatives*, 311 Or App 70, 74, 490 P3d 166 (2021). We do so by examining the text in context and, when appropriate, legislative history and relevant canons of construction. *Id.* In this case, we note that we have reviewed the legislative history supplied by the parties but do not find it helpful on the question presented.

The issue is whether a record—like Christian's inmate file—that was compiled for reasons unrelated to a criminal investigation becomes "investigatory information compiled for criminal law purposes" when the record is subsequently requested by law enforcement or a prosecutor in connection with a criminal investigation. OPB argues that it does not; ODOC argues that it does.

The text favors OPB's interpretation for several reasons. It is undisputed that inmate files are assembled in the ordinary course of ODOC's business, not as part of a criminal law investigation, making it difficult to characterize the file as "investigatory information," at least at the time of file assembly.

It is also difficult to characterize an inmate file as information "compiled for" criminal law investigative purposes, when the words "compiled" and "for" are given their ordinary meanings. "Compile" generally means "to collect and assemble (written material or items from various sources) into a document or volume or a series of documents or volumes"; "to gather or collect"; and "to put together." *Merriam-Webster Unabridged Dictionary*, https://unabridged-merriam-webster-com.soll.idm.oclc.org/unabridged/compile (accessed May 22, 2026). "For" in this context typically means "as a preparation toward"; "having as goal or object"; or "with the purpose or object of." *Merriam-Webster Unabridged Dictionary*, https://unabridged-merriam-webster-com.soll.idm.oclc.org/unabridged/for (accessed May 22, 2026). A record thus would appear to fit within the exemption only if its contents were gathered or collected as preparation toward, or with object of, "criminal law purposes." That is not the case with a file the contents of which are gathered and collected in the ordinary course of an

agency's business and not with the objective of serving a criminal law purpose.

ODOC, and the Attorney General's Manual, nevertheless take the position that a record that is prepared and maintained for reasons other than criminal law purposes transforms into "investigatory information compiled for criminal law purposes" whenever it is provided to law enforcement or a prosecutor in connection with an investigation or prosecution. Accepting that construction would require us to infer that the legislature intended us to, in effect, accept the rewriting of the history of the record. Where, as a factual matter, a record is compiled for reasons unrelated to criminal law purposes, it is not factually accurate to describe it as being compiled for criminal law purposes simply because the record is subsequently provided to law enforcement in connection with a criminal investigation. The factually accurate description of that scenario is that a record that was compiled for reasons unrelated to a criminal investigation was later included in records transferred to law enforcement—possibly as part of a larger compilation of records—in response to an investigative demand. We are reluctant to conclude that the legislature intended a construction of ORS 192.345(3) that would require us to step away from reality by disregarding the fact that the requested records were compiled for reasons unrelated to criminal law purposes.

It is worth noting that the issue here is not whether a set of records compiled in response to an investigative demand falls within the exemption. That is, the records request at issue on appeal did not request ODOC to disclose the specific set of records that it had provided to law enforcement in connection with the investigation. If that had been the request, ODOC would have a strong argument that the exemption applied to that records request because such a request would be seeking a set of records that were, in fact, compiled for criminal law purposes. The question here is different: whether records compiled for reasons other than criminal law purposes fall within the scope of the exemption simply because they are subsequently included in a set of

records provided to law enforcement or a prosecutor in connection with a criminal investigation or prosecution.

Regardless, although we tend to view OPB's construction of ORS 192.345(3) as more likely to reflect the legislature's intent than ODOC's construction, we ultimately need not resolve that question. That is because application of the "narrow construction" rule to ORS 192.345(3) requires us to accept OPB's construction. Assuming that both constructions are plausible in light of the text, context, and legislative history of the statute, that renders ORS 192.345(3) ambiguous. As explained above, where an exemption's scope is ambiguous, and where there is a plausible construction of the exemption that favors disclosure, that construction must prevail. *Colby*, 224 Or App at 676. OPB's construction is plausible and favors disclosure; ODOC's construction, even if plausible, does not. OPB's construction must therefore prevail.

In arguing for a different result, ODOC points to two cases: our decision in *Jensen v. Schiffman*, 24 Or App 11, 544 P2d 1048 (1976); and the United States Supreme Court's decision in *John Doe Agency*. *Jensen* has no bearing on this case because it did not address the question here. In *Jensen*, we assumed that the records involved fell within the exemption, and the question we resolved was whether the records remained exempt once the pertinent investigation ended. *Jensen*, 24 Or App at 13, 14-17.

As for *John Doe Agency*, we recognize that the Supreme Court construed comparable wording in the federal Freedom of Information Act (FOIA) in the same way ODOC construes ORS 192.345(3). *John Doe Agency*, 493 US at 153 (concluding that "compiled for law enforcement purposes" in 5 USC § 552(b)(7) "seems readily to cover documents already collected by the Government originally for non-law-enforcement purposes"). That holding, however, does not aid in the construction of ORS 192.345(3) for three reasons. First, *John Doe Agency* was decided in 1989. As a result, it is not probative of the Oregon legislature's intent in adopting ORS 192.345(3) in 1973.[2] *See State v. Guzman/Heckler*, 366 Or

---

[2] We note that the exemption currently contained in ORS 192.345(3) was originally codified at ORS 192.500(1)(c). *See former* ORS 192.500(1)(c) (1973), *renumbered as* ORS 192.345(3) (2017).

18, 25 n 2, 29, 455 P3d 485 (2019) (discussing how case law existing at the time a statute is enacted can be probative of the legislature's intent). Second, to the extent the opinion is relevant as potentially persuasive authority, the majority opinion did not apply Oregon's "narrow construction" rule to evaluate whether there was a plausible construction of the federal statute that favored disclosure. *John Doe Agency*, 493 US at 153-58. Indeed, Justice Scalia's dissenting opinion, joined by Justice Marshall, applied a "narrow construction" rule akin to Oregon's "narrow construction" rule and reached the same conclusion that we reach here regarding the scope of the exemption. *Id.* at 160-64 (Scalia, J., dissenting). Third, even disregarding its failure to apply a "narrow construction" rule, the majority opinion's approach to statutory construction bears little resemblance to Oregon's approach. On that point, Justice Stevens's dissenting opinion is more in line with the Oregon approach. *Id.* at 160 (Stevens, J., dissenting) ("As I understand the record in this case, the Government has at most established a request by a prosecutor that the requested documents be kept secret and a naked transfer of otherwise nonexempt documents from a civilian agency to the FBI. Such a transfer is not a compilation.").

For all these reasons, we conclude that the construction of ORS 192.345(3) advanced by OPB is the correct one, and the construction advanced by ODOC is not. We therefore reverse and remand for entry of a declaration consistent with this opinion.

Reversed and remanded.