Argued and submitted August 8, remanded for reconsideration December 24, 2008

CROOKED RIVER RANCH WATER COMPANY,
*Petitioner,*

*v.*

PUBLIC UTILITY COMMISSION OF OREGON,
*Respondent.*

Public Utility Commission of Oregon
WJ 8; A134177

198 P3d 967

C. Robert Steringer argued the cause for petitioner. With him on the briefs were Jona J. Maukonen, Harrang Long Gary Rudnick P.C., Timothy R. Gassner, and Glenn Sites Reeder & Gassner LLP.

Rolf Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Riggs, Senior Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Petitioner Crooked River Ranch Water Company (Crooked River) seeks judicial review of an order of the Public Utility Commission (PUC) that determined that petitioner was "subject to regulation" under ORS 757.063(1). That statute provides that an association—other than a cooperative—that furnishes water to its members is subject to PUC regulation in the same manner as a public utility "if 20 percent or more of the members of the association file a petition with the [PUC] requesting that the association be subject to such regulation." ORS 757.063. For the reasons that follow, we remand the PUC's order for reconsideration.

The relevant facts are procedural in nature and are essentially undisputed. Crooked River was originally formed in 1977 to provide water to its members. It was organized as a nonprofit corporation and was registered as such with the Secretary of State. Some 26 years later, in 2003, Oregon's legislature enacted ORS 757.063, which provides:

"(1) Any association of individuals that furnishes water to members of the association is subject to regulation in the same manner as provided by this chapter for public utilities, and must pay the fee provided for in ORS 756.310, if 20 percent or more of the members of the association file a petition with the Public Utility Commission requesting that the association be subject to such regulation.

"(2) The provisions of this section apply to an association of individuals even if the association does not furnish water directly to or for the public. *The provisions of this section do not apply to any cooperative formed under ORS chapter 62* or to any public body as defined by ORS 174.109."

(Emphasis added.) In short, the statute gives the PUC the authority to regulate a water association, other than a cooperative, if 20 percent of the association's members petition the PUC to do so.

In February 2006, the PUC began receiving petitions from Crooked River's members, requesting that the PUC regulate the association. The PUC tracked those petitions to determine whether the 20 percent statutory threshold had been met, and verified the petitions by confirming

that the address on each of the petitions matched that of a current Crooked River member. Some petitions were rejected because they were duplicates or could not be associated with the address of a current Crooked River member. Nonetheless, by April 2006, the PUC believed that the 20 percent threshold had been met.[1]

That month, the PUC sent a letter to Crooked River that was captioned "**NOTICE OF INTENT TO ASSERT FINANCIAL AND SERVICE REGULATORY AUTHORITY**[.]" (Boldface and uppercase in original.) The letter stated, in part, "The Commission has received petitions from more than 20 percent of the association members that request regulation of [Crooked River]. This letter is notification of the Commission's intent to assert its authority and regulate [Crooked River] for rates and service." The letter also notified Crooked River of its "right to dispute whether the 20 percent threshold has been met, including challenging the validity of the filed petitions, and formally request a hearing within 30 days from the date of this letter."

In May 2006, Crooked River requested a hearing to dispute whether the 20 percent threshold had, in fact, been met. As part of its request for a hearing, Crooked River argued that it had been operating as a cooperative under ORS chapter 62. At that time, however, Crooked River was actually registered with the Secretary of State as a nonprofit corporation rather than a cooperative. In July 2006, the Crooked River board of directors dissolved the nonprofit corporation and formed a cooperative under ORS chapter 62.

The following month, the PUC held an evidentiary hearing pursuant to its notice. Crooked River asserted, among other arguments, that it was formed as a cooperative and was therefore exempt before the PUC assumed regulation of it under ORS 757.063(2). PUC staff, on the other hand, took the position that Crooked River's attempts to reorganize as a cooperative were ineffective. According to PUC staff, Crooked River became "subject to regulation" as soon as the petitions were received from 20 percent of the members; at

---

[1] The PUC determined that it had received 397 petitions; the 20 percent threshold required 311.

that point, Crooked River became "subject to" ORS 757.480, which requires a public utility to obtain PUC permission before disposing of certain property.

In its final order, the PUC adopted its staff's position regarding the effect of ORS 757.063 and ORS 757.480. The PUC explained:

> "[W]e agree with Staff that ORS 757.063 confers jurisdiction upon Commission receipt and verification of signatures from 20 percent of a water association's members. ORS 757.063 provides, in part, that: 'Any association of individuals that furnishes water to members of the association *is subject to regulation* * * * if 20 percent or more of the members of the association file a petition[.]' (Emphasis supplied.) While the Commission has provided [Crooked River] a right to a hearing to challenge those petitions, jurisdiction presumptively attached when the Commission verified a sufficient number of signatures had been received by [April 2006].
>
> "Furthermore, because jurisdiction presumptively attached at that time, [Crooked River] became a regulated utility subject to laws administered by the Commission. Those laws require, among other things, that a utility obtain Commission approval prior to the disposal of utility property. *See* ORS 757.480. Contrary to [Crooked River's] arguments, the dissolution, transfer, and reorganization of a water company's assets requires approval under this statute. Having failed to obtain that approval, [Crooked River's] efforts to reorganize as a cooperative under ORS chapter 62 are without legal effect."

On review, Crooked River argues that the PUC's order is based on an erroneous interpretation of ORS 757.063. Specifically, Crooked River argues that it did not become a "regulated entity"—that is, it was not governed by PUC regulations, including ORS 757.480—until the PUC issued its final order "asserting jurisdiction." The PUC, on the other hand, contends that Crooked River became "subject to regulation"—that is, subject to all applicable PUC regulations, including ORS 757.480—as soon as the PUC received petitions from 20 percent of Crooked River's members.

■■  The determinative issue framed by the parties is one of statutory construction concerning the meaning of

ORS 757.063.[2] More specifically, we must determine whether the legislature intended an association to be "subject to regulation" under ORS 757.063 at (1) the moment that the requisite number of petitions are filed with the PUC; or (2) the moment that the PUC *issues an order determining* that the requisite number of petitions have been filed and that the association is "subject to regulation." Our task is to discern the meaning of the statute most likely intended by the legislature by examining the text in context and, if necessary, legislative history and other aids to construction.

Preliminarily, we observe that ORS 757.063 does not contain an express requirement that the PUC do *anything* before an association becomes "subject to regulation." From that silence, the PUC makes the plausible argument that the legislature must have intended an association to be "subject to regulation" as soon as petitions are filed by 20 percent of the members of the association.

Of course, we cannot supply language that the legislature has omitted. ORS 174.010. But, the legislative scheme of which ORS 757.063 is a part is not completely silent on the subject. When the text of ORS 757.063 is read in the context of the PUC regulatory scheme as a whole, Crooked River's interpretation becomes plausible as well. First, intuitively, it seems unlikely that the legislature would have intended an association to be "subject to regulation in

---

[2] Crooked River advances two additional assignments of error that, if correct, might require us to set aside the PUC's order. The first pertains to the fact that some of the petitions did not contain a telephone number, as required by PUC rule. *See* OAR 860-036-0412(3) ("Petitions must be in writing, state the purpose of the petition, and include the member's name, address, telephone number, and signature."). However, given that the PUC was otherwise able to verify that each of the petitions was, in fact, signed by an actual member of the association, the petitions and the PUC's review of those petitions substantially complied with the statutes and rules governing petitions. *See* ORS 756.062(1) ("A substantial compliance with the requirements of the laws administered by the [PUC] is sufficient to give effect to all the rules, orders, acts and regulations of the commission and they shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto."). The other assignment of error asserts that ORS 757.063 violates the Contracts Clause of the Oregon Constitution. That issue was not raised below and does not constitute error apparent on the face of the record. ORAP 5.45; *Thomas Creek Lumber v. Board of Forestry,* 188 Or App 10, 30, 69 P3d 1238 (2003) (preservation requirements of ORAP 5.45 "apply not only to appeals of trial court judgments but also to petitions for judicial review of agency action"). We therefore do not address it.

the same manner as provided * * * for public utilities" under the various provisions of ORS chapter 757 *before the PUC has even notified the association that it is "subject to regulation."* And yet, if the PUC's reading of the text is correct—and an association is automatically "subject to regulation" at the moment that the requisite number of petitions are filed—a utility could be "subject to regulation" without even being informed of that fact. Moreover, there is no requirement in the statute that the members of an association inform the association that they have filed petitions with the PUC. Given the improbability that the legislature intended an association to be unwittingly subject to regulation, it could be that the legislature, by enacting ORS 757.063(1), intended to vest the PUC with the authority to first determine whether it could and should regulate the subject water association.

Crooked River's proposed reading of the statute is also consistent with other statutes that govern the notice and hearing rights that accompany the PUC's assertion of regulatory authority generally. Under ORS 756.515(1), the PUC may investigate to determine whether any "person," including an association,[3] is "subject to the commission's regulatory jurisdiction * * *."[4] If the commission determines that a hearing is necessary, the PUC "shall furnish any public utility or telecommunications utility or other person interested a statement notifying it of the matters under investigation[.]" ORS 756.515(2). Whether or not the commission determines that a hearing is necessary, ORS 756.515 contemplates that, in the case of a dispute over the PUC's exercise of its authority, the PUC will first issue an order determining whether a person is within the PUC's regulatory authority before it commences to exercise that authority. ORS 756.515(3), (4).

Based on those competing views of the meaning of ORS 757.063, both of which are plausible, we conclude that the statute's silence as to when the PUC's regulatory authority commences is susceptible to more than one understanding

---

[3] ORS 756.010 defines a "person" for purposes of ORS chapter 757 to include "individuals, joint ventures, partnerships, corporations and associations or their officers, employees, agents, lessees, assignees, trustees or receivers."

[4] The final order in this case indicates that it was made as part of "An Investigation Pursuant to ORS 765.515 to Determine Jurisdiction."

of the legislature's intent. In order to resolve the ambiguity in ORS 757.063(1), we turn to the legislative history underlying the statute. House Bill 2226, of which ORS 757.063 was a part, was designed to clear up a "gray area" regarding the regulation of water associations. Audio Recording, Senate Floor Debate, HB 2226, Apr 16, 2003, at 1:17.08 (statement of Sen Roger Beyer), http://www.leg.state.or.us/listn/archive/archive.2003s/SENATE-200304161029.ram. Senator Beyer, who carried the bill on the floor of the Senate, explained that the bill would allow 20 percent of the members of an association to petition for regulation and "then PUC will determine whether there is reason to provide oversight and, if so, initiate regulation." *Id.* The fact that the legislature understood that the PUC would *first* make a determination that "there is reason to provide oversight" and, "*if so,*" initiate regulation, undermines the PUC's contention that an association automatically becomes "subject to regulation" at the moment that the requisite petitions are filed. We conclude that, in light of the text, context, and legislative history of ORS 757.063, the legislature intended an association to be "subject to regulation" only after the PUC issues an order pursuant to ORS 756.515 determining whether the 20 percent petition threshold has been satisfied.[5] Only then is the association "subject to regulation." The PUC erred in concluding otherwise, and on remand, it must complete the process contemplated by its notice in light of a correct interpretation of ORS 757.063.

Remanded for reconsideration.

---

[5] The PUC's April 2006 "Notice of Intent to Assert Financial and Service Regulatory Authority" indicated only that PUC intended to make that determination *in the future*. That letter, although stating that the commission had received petitions from more than 20 percent of Crooked River's members, expressly gave Crooked River the right to dispute the validity of those petitions and indicated that the PUC would issue an order asserting jurisdiction in the event that Crooked River did not respond to the letter within 30 days. By its own terms, the letter was not an order determining that the requisite petitions had been filed and that Crooked River was an association "subject to regulation," but rather a notice of the PUC's intent to make such a determination. *See* OAR 860-036-0412(5) (providing that, in the event that 20 percent of the association's members petition the PUC for regulation, the PUC "must issue an order notifying the association of its change in regulatory status to a regulated water utility").