Argued and submitted August 17, 2020, reversed in part and remanded
October 13, 2021

Brandy DALBECK,
*Plaintiff-Appellant,*

*v.*

BI-MART CORPORATION,
*Defendant-Respondent.*

Lane County Circuit Court
18CV28947; A170691

500 P3d 711

In this age discrimination case in which plaintiff alleges that defendant discriminated against her by refusing to sell her a hunting rifle because she was 18, plaintiff assigns error to the trial court's grant of summary judgment to defendant. Plaintiff argues that the court erred in interpreting ORS 659A.403 as not protecting persons between the ages of 18 and 20 from age discrimination, and, alternatively, in recognizing an implied exception to the statutory bar on age discrimination. Plaintiff also assigns error to the court's denial of her motion to amend her complaint to add a claim for punitive damages. Finally, plaintiff assigns error to the court's denial of her motion for partial summary judgment on the issue of standing. *Held*: The trial court erred when it granted summary judgment to defendant on the ground that ORS 659A.403 did not prohibit defendant from discriminating against persons aged 18 to 20. The trial court did not err with regard to the motion to amend or motion for partial summary judgment.

Reversed in part and remanded.

Charles D. Carlson, Judge.

Max C. Whittington argued the cause for appellant. Also on the opening brief was Cauble, Cauble & Selvig, LLP. Also on the reply brief was Cauble, Selvig & Whittington, LLP.

Jonathan Henderson argued the cause for respondent. Also on the brief were Samuel K. Anderson and Davis Rothwell Earle & Xóchihua, P.C.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed in part and remanded.

Kamins, J., concurring.

**LAGESEN, P. J.**

Plaintiff Brandy Dalbeck learned to hunt growing up and, at age 18, she went to one of defendant Bi-Mart Corporation's Oregon stores to purchase a hunting rifle. Upon learning that she was 18, and in accordance with its company policy of not selling firearms to people under the age of 21, the store clerk refused to show plaintiff the women's hunting rifle she wanted, although plaintiff is of age to own and possess a hunting rifle in Oregon.

That course of events led to this lawsuit for unlawful age discrimination under ORS 659A.403. On defendant's motion for summary judgment, the trial court dismissed the case, concluding that ORS 659A.403 does not prohibit a place of public accommodation—like defendant—from discriminating against persons aged 18 to 20 on the basis of age. Further, the court concluded, even if it does, defendant nonetheless could adopt a policy against selling firearms to persons under the age of 21 because the policy addressed a matter of public safety.

We conclude otherwise. The text and context of ORS 659A.403 demonstrate that the legislature intended to prohibit age discrimination against those who have reached the age of majority—18—absent explicit authorization by law for the differential treatment. Because no statute authorizes differential treatment of persons between the ages of 18 and 21 when it comes to purchasing a hunting rifle, we reverse and remand.

Unlike some cases about firearms, *see, e.g.*, *State v. Shelnutt*, 309 Or App 474, 483 P3d 53, *rev den*, 368 Or 206 (2021), this case presents no questions of constitutional law. Rather, it is about the meaning and scope of the Oregon statute prohibiting age discrimination, ORS 659A.403. Plaintiff sued defendant for age discrimination under that statute after defendant, in accordance with its policy of not selling firearms and ammunition to people under the age of 21, refused to sell plaintiff a hunting rifle because plaintiff was only 18.[1] On appeal, plaintiff contends that the trial

---

[1] We note that the trial court determined that there were triable issues of fact as to whether plaintiff would have purchased the rifle. Consistent with the standard of review that governs our review of a trial court's grant of summary

court (1) erred in granting summary judgment to defendant; (2) erred in denying plaintiff's motion for partial summary judgment on the issue of her standing to sue defendant for age discrimination; and (3) erred when it denied plaintiff's motion to amend her complaint to add a claim for punitive damages. Defendant responds that the court's judgment should be affirmed in all respects. We conclude that the court erred by granting summary judgment to defendant. We affirm with regard to the denial of plaintiff's motion for partial summary judgment and the trial court's punitive damages ruling.

*Age discrimination*. We start with the main issue on appeal, presented by plaintiff's second and third assignments of error: whether the trial court erred in granting summary judgment to defendant on plaintiff's age discrimination claim under ORS 659A.403. The trial court did so on two alternative grounds. First, it concluded that ORS 659A.403 does not protect persons from age discrimination if, like plaintiff, they are aged 18 to 20 years old. Alternatively, the court reasoned that ORS 659A.403 contained "implied exceptions" allowing for places of public accommodation to adopt age-discriminatory policies "for public health or if safety is at issue, be it tobacco, marijuana, alcohol, gaming, transportation, or firearms." Those implied exceptions, the court reasoned, allowed defendant to adopt its policy of declining to sell firearms and ammunition to people under 21. Based on those determinations, the court dismissed the case.

On appeal, the question before us is whether, in ORS 659A.403, the Oregon legislature has made it unlawful for places of public accommodation to discriminate against someone based on age, when that person is at least 18 but not yet 21. Whether and to what extent ORS 659A.403 allows a place of public accommodation to discriminate against someone who has reached the age of 18 based on their age

---

judgment, we state the facts of the parties' underlying dispute in the light most favorable to plaintiff, the nonmoving party, when discussing the court's ruling on defendant's motion for summary judgment. *Thompson v. Portland Adventist Medical Center*, 309 Or App 118, 121, 482 P3d 805 (2021). As we discuss when addressing them, plaintiff's other assignments of error implicate different standards of review that require us to take a different view of the facts.

presents a question of statutory construction, something we review for legal error. *State v. Werner*, 292 Or App 397, 399, 424 P3d 809, *rev den*, 363 Or 744 (2018). Our role is to determine what "the enacting legislature most likely intended." *Tarr v. Multnomah County*, 306 Or App 26, 33, 473 P3d 603 (2020), *rev den*, 367 Or 496 (2021). To do that, we examine the statutory "text, in context, and, where appropriate, legislative history and relevant canons of construction." *Chase and Chase*, 354 Or 776, 780, 323 P3d 266 (2014).

Addressing age discrimination, ORS 659A.403 provides, in relevant part:

"(1)   Except as provided in subsection (2) of this section, all persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of *** age if the individual is of age, as described in this section, or older.

"(2)   Subsection (1) of this section does not prohibit:

"(a)   The enforcement of laws governing the consumption of alcoholic beverages by minors and the frequenting by minors of places of public accommodation where alcoholic beverages are served;

"(b)   The enforcement of laws governing the use of marijuana items, as defined in ORS 475B.015, by persons under 21 years of age and the frequenting by persons under 21 years of age of places of public accommodation where marijuana items are sold; or

"(c)   The offering of special rates or services to persons 50 years of age or older."

In this case, there is no dispute that it is lawful for an 18-year-old to purchase and possess a hunting rifle, and there is no dispute that it is lawful for a place of public accommodation to sell a hunting rife to a person who is 18 or above. There also is no dispute, when the facts are viewed in the light most favorable to plaintiff, that defendant discriminated against plaintiff based on her age by refusing to sell her a hunting rifle. Defendant refused to sell plaintiff a hunting rifle because plaintiff was 18 years old and it has a company policy of not selling firearms to persons under

the age of 21. That is age discrimination. *See, e.g.*, *Ogden v. Bureau of Labor*, 299 Or 98, 101, 699 P2d 189 (1985) (declining to hire someone because she was "too young" constituted unlawful age discrimination in employment (internal quotation marks omitted)).

The issue is *who* does the statute protect against age discrimination. In particular, the question is whether the statute protects persons aged 18 to 20 against age discrimination. The words of the statute answer that question with these words: A person is protected if the person is "of age, as described in this section, or older." Our task, then, is to ascertain what the legislature meant when it said "of age, as described in this section, or older."

This is not an instance in which the legislature has supplied an easy answer. It did not explicitly define the phrase "of age." And, although the phrase that follows "of age"—"as described in this section"—suggests that a different subsection of ORS 659A.403 will directly confront what it means to be "of age," that is not the case.

Despite this oblique approach, the words of ORS 659A.403 supply three clues to the legislature's intentions. Each clue points toward the conclusion that the legislature generally intended for persons age 18 and over to be protected against age discrimination, absent a distinct provision of law authorizing differential treatment based on age.

First, the legislature used the phrase "of age." That phrase ordinarily connotes the age of majority. *Webster's*, for example, pertinently defines "age" in the context of the phrase "of age" to mean: "MATURITY; *specifically* : the time of life at which one attains full legal rights and responsibilities <last week he came of [age]>." *Webster's Third New Int'l Dictionary* 40 (unabridged ed 2002). In Oregon, like most states, persons are "of age" in that sense at 18:

"Except as provided in ORS 109.520, in this state any person shall be deemed to have arrived at majority at the age of 18 years, and thereafter shall:

"(1)   Have control of the person's own actions and business; and

"(2)   Have all the rights and be subject to all the liabilities of a citizen of full age."

ORS 109.510; *see Black's Law Dictionary* 70 (9th ed 2009) (explaining that the "age of majority" is "[t]he age, usu. defined by statute as 18 years, at which a person attains full legal rights, esp. civil and political rights," and that "[i]n almost all states today, the age of majority is 18, but the age at which a person may legally purchase and consume alcohol is 21").

Second, the "except" clause at the beginning of ORS 659A.403(1) points the same direction. By referring to subsection (2)—which describes two circumstances in which discrimination against persons under 21 is allowable—it suggests that the legislature intended that the prohibition against age discrimination would protect persons under the age of 21, at least in some circumstances. If the legislature intended that only persons 21 and over be considered "of age" for purposes of the ORS 659A.403(1), then there would have been no need to spell out in subsection (2) that discrimination against persons under the age of 21 is permissible in some circumstances.

Third, the legislature chose to use the word "*described*" to explain that age discrimination is prohibited against persons "of age, as *described* in this section, or older." (Emphases added.) That word choice also suggests that we should read the statute to bar age discrimination against persons who have reached the 18-year-old age of majority, except where other provisions of law expressly require a person to be older to be entitled to a certain right or privilege. "Describe" connotes something different from "define," in a way that suggests that the legislature intended to give representative examples of what it means to be of age. When we give "describe" its usual meaning—something we ordinarily must do when construing statutes, *see DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016)—the word communicates the notion of representation rather than definition. According to *Webster's*, "describe," in this context, ordinarily means to create a verbal representation: "**1:** to represent by words written or spoken for the knowledge or understanding of others: **a:** to communicate verbally from the results of personal

observation an account of salient identifying features of." *Webster's* at 610. When the specific examples included in subsection (2) are viewed along with the ordinary meaning of "of age," and the "except" clause of subsection (1), they tend to "describe" the notion that "of age" means the ordinary age of majority except where other provisions of law—like those governing the purchase and consumption of alcohol and marijuana—provide for a different age of majority.[2]

Context supports this reading. Context "may include other provisions of the same statute and related statutes, prior enactments and prior judicial interpretations of those and related statutes, and the historical context of the relevant enactments." *Young v. State of Oregon*, 161 Or App 32, 35, 983 P2d 1044 (1999) (internal citations omitted).

As noted in our discussion of text, we consider ORS 109.510 to be a related statute because it defines, in general, what it means to be "of age," that is, to have reached the age of majority in Oregon. That age is 18 and, with a few exceptions delineated by other statutes, upon reaching the age of 18, a person is entitled to the political and civil rights possessed by an adult and is expected to assume the responsibilities and liabilities of an adult.

ORS 659A.406 likewise signals that the legislature, as a general matter, intended to protect persons age 18 and older against age discrimination. It prohibits individuals acting on behalf of a place of public accommodation from "mak[ing] any distinction, discrimination or restriction on account of * * * age if the individual is 18 year of age or older," and prohibits individuals from aiding and abetting a place of public accommodation in "mak[ing] any distinction, discrimination or restriction on account of * * * age if the individual is 18 years of age or older." ORS 659A.406. It would make little sense for the legislature to bar age discrimination against those 18 and over by the individuals who assist or act on behalf of a place of public accommodation, while allowing the place of public accommodation itself to engage in age discrimination against persons aged 18 to 20.

---

[2] Subsections 1 and 2 of ORS 659A.403 were enacted as part of the same section of House Bill 3400 (2015). Or Laws 2015, ch 614, § 27.

Context, as we stated, also includes previous versions of ORS 659A.403. Until 2015, that statute, like current ORS 659A.406, stated that, except as provided in *former* ORS 659.403(2) (2013), *amended by* Or Laws 2015, ch 614, § 27, it was unlawful to discriminate based on age against someone who was "18 years of age or older." *See former* ORS 659A.403(1) (2013), *amended by* Or Laws 2015, ch 614, § 27. As part of House Bill (HB) 3400 (2015), the comprehensive legislation to implement Ballot Measure 91 (2014), which legalized the growth and use of marijuana for recreational use in Oregon, the legislature amended ORS 659A.403 to its present form. Or Laws 2015, ch 614, § 27. Specifically, the legislature changed the reference in subsection (1) to "18 years of age or older" to "of age, as described in this section, or older," and amended subsection (2) to clarify that the statute did not prohibit the enforcement of laws related to the use of marijuana by persons under the age of 21. *Id.* Nothing in the text of HB 3400 indicates any intention by the legislature to displace the age of 18 as the age at which ORS 659A.403 would safeguard against age discrimination, absent explicit legislative authorization of age discriminatory practices. Rather, the focus of the entire bill was the enormous task of comprehensively implementing Oregon's newly legal marijuana industry, a task that included protecting persons under the age of 21 from risks posed by marijuana use. *See* Or Laws 2015, ch 614, §§ 25-28 (addressing the "Protection of Persons Under 21 Years of Age" (capitalization in original)). That tends to indicate that, in amending ORS 659A.403 in 2015, the legislature did not intend to displace existing protections against age discrimination for persons aged 18 to 20 but, instead, sought to clarify that compliance with laws restricting access to marijuana to those 21 and over is not unlawful age discrimination.

Finally, we have reviewed the legislative history of the 2015 amendments to ORS 659A.403 and have not been able to locate a single explanation or discussion of those changes. That silence is noteworthy, in that it seems unlikely that the legislature would use comprehensive marijuana legislation to significantly alter the scope of protections afforded by Oregon's antidiscrimination laws without even discussing the point or calling for the perspective of

the Oregon Bureau of Labor and Industries (BOLI), which is charged with enforcing Oregon's civil rights laws.[3]

This persuades us that, unless a provision of law explicitly authorizes differential treatment based on age, the legislature intended to protect Oregonians age 18 and over against discrimination based on age.

Defendant nonetheless argues that we should interpret the statute differently, to permit age discrimination against persons aged 18 to 20 or, alternatively, to allow for age discrimination when there is an identified public safety concern. None of defendant's arguments persuades us that the interpretation of ORS 659A.403 that the enacting legislature "most likely intended" is other than the one we have identified. *State v. Clemente-Perez*, 357 Or 745, 757, 359 P3d 232 (2015).

Defendant's main argument is that the legislature has enacted a number of statutes that allow differential treatment of people aged 18 to 20. The statutes that defendant identifies are as follows: ORS 167.755; ORS 646A.140; ORS 480.225; ORS 471.482; ORS 126.872; ORS 461.600; ORS 820.200; ORS 732.085; ORS 732.305; ORS 742.490 (1)(c); ORS 555.130; ORS 418.001; ORS 811.632(1); ORS 181A.855; ORS 166.291; and ORS 497.360(3). From these statutes, defendant urges us to infer that the legislature did not intend to prohibit age discrimination by places of public accommodation against persons aged 18 to 20.

It is not immediately apparent that the statutes identified by defendant implicate the provision of services by a place of public accommodation; some involve state

---

[3] In that regard, we note that BOLI's stated position appears to be that ORS 659A.403 protects those age 18 and over against discrimination in places of public accommodation:

"It is illegal to discriminate in places of public accommodation on the basis of race, sex (including pregnancy), sexual orientation, national origin, religion, marital status, physical or mental disability, or age (18 years of age and older)."

https://www.oregon.gov/boli/civil-rights/Pages/your-rights-to-public-places.aspx (last visited Sept 30, 2021). Although we do not defer to BOLI, we think it worth noting that our review of the text and context of the statute is consistent with that of the agency charged with enforcing the statute. *See Hernandez v. Catholic Health Initiatives*, 311 Or App 70, 80, 490 P3d 166 (2021).

regulatory schemes that the legislature may not have contemplated as implicating the public accommodations laws. Assuming, however, for sake of argument that the statutes do address conduct by places of public accommodation within the meaning of ORS 659A.403, the key thing about each is that it is a *statute*, that is, an express legislative authorization of differential treatment based on age. That is entirely consistent with our reading of ORS 659A.403 to prohibit places of public accommodation from discriminating against persons aged 18 and older, unless some other provision of law allows for differential treatment. What is notable here is that there is no statute—no express legislative authorization—for discriminating against persons aged 18 to 20 in the sale of hunting rifles. To the extent that the statutes identified by defendant might call for us to resolve a potential conflict between ORS 659A.403 and a different statute authorizing differential treatment based on age in a different case, there is no such conflict presented in this case.

Were there a conflict, however, the legislature has directed that, "[w]hen a general provision and a particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent." ORS 174.020. Consequently, if confronted with the general ban on age discrimination included in ORS 659A.403 and a specific statutory authorization of discrimination based on age that is inconsistent with that general ban, the legislature has signaled its intention that we give the specific provision effect over the general. This is yet another reason to read ORS 659A.403 as generally barring age discrimination against persons 18 and older absent explicit legislative authorization for differential treatment on the basis of age.

We acknowledge that our reading of ORS 659A.403 to prohibit age discrimination against persons aged 18 and over absent a statutory authorization to the contrary gives rise to some redundancy, because it makes the exceptions identified in subsection (2) largely unnecessary, apart from their role in "describ[ing]" what it means to be "of age, as described in this section, or older." But reading the statute to

prohibit age discrimination only to those 21 and over leads to a similar redundancy. As discussed earlier, if the legislature did not intend to prohibit at least some age discrimination against persons under the age of 21, those exceptions also would not be necessary. In any event, as we have observed previously, "in legal drafting, redundancy is a fairly common phenomenon," and, with this particular statute, we have been unable to locate an interpretation that avoids redundancy. *Friends of Yamhill County v. Yamhill County*, 229 Or App 188, 195, 211 P3d 297 (2009). We also recognize that our interpretation means—potentially—that there are more exceptions to the prohibition on age discrimination than those identified in ORS 659A.403(2) due to the legislature's enactment of other more specific statutes authorizing or imposing age-based restrictions allowing for differential treatment of people aged 18 to 20. But none of that convinces us that the legislature "most likely" intended generally to allow age discrimination by public accommodations against persons who have reached the 18-year-old age of majority in this state, given the textual and contextual clues pointing to that conclusion and the lack of textual and contextual clues pointing to the conclusion that the legislature intended to prohibit age discrimination against only those persons aged 21 or above.

Defendant argues, in the alternative, that we should "read into [the statute] an exception to the prohibition against age discrimination when public health or safety is at issue." Defendant notes that its policy was prompted by a desire to reduce gun violence and, in particular, by evidence of the risk of tragic mass shootings posed by young people with access to firearms. Defendant additionally points to the fact that a number of states have enacted laws restricting firearms purchases by persons under the age of 21.

We do not question that defendant's policy is the product of its desire to prevent or reduce the tragic losses suffered by families as a result of gun violence. Gun violence is an escalating problem in this country. It is one that calls for action by all citizens, including our corporate citizens, to save lives.

The law, though, limits the solutions currently available to solve that problem. In particular, current Oregon law, by generally prohibiting discrimination based on age against a person who has reached the age of majority, does not allow for the problem of gun violence to be solved by discriminating against people aged 18 to 20 based on their age. We, as a court, are not empowered to craft an exception to the legislature's bar on age discrimination that the legislature itself did not write: "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010. As the exceptions related to the regulation of alcohol and marijuana and other provisions authorizing age-based restrictions illustrate, where the legislature intends to permit persons aged 18 to 20 to be treated differently from persons age 21 or above based on age alone, it says so expressly. If there is to be an exception to the prohibition on age discrimination contained in ORS 659A.403, it must come from the legislature itself, not from the courts. As defendant itself notes, other states have enacted statutes allowing for age-based restrictions on firearms in furtherance of the aim of public safety. Should the Oregon legislature agree with the policy choices of those states, those statutes may supply a roadmap for legislation to address the question.

For these reasons, the trial court erred when it concluded that ORS 659A.403 did not prohibit defendant from refusing to sell a hunting rifle to plaintiff based on the fact that she was 18 years old and not yet 21. Accordingly, we reverse the judgment of dismissal and remand for further proceedings on petitioner's claim.[4]

*Punitive damages.* Plaintiff also assigns error, in her first assignment of error, to the trial court's denial of her motion under ORS 31.725 to amend the complaint to add a claim for punitive damages. To add a claim for punitive

---

[4] Defendant argues that we should affirm the trial court's grant of summary judgment on the alternative ground that (1) plaintiff sought only injunctive relief on her age discrimination claim and (2) injunctive relief, according to defendant, is not available under the relevant statutes. That argument fails because, regardless of whether plaintiff is entitled to injunctive relief, she sought damages as well.

damages under ORS 31.725, a plaintiff must put forth a *prima facie* case that would allow for a finding that the defendant "has acted with malice or shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." ORS 31.730(1); *Bolt v. Influence, Inc.*, 333 Or 572, 580, 43 P3d 425 (2002). Here, given the ambiguous drafting of ORS 659A.403, and the lack of court decisions construing it, it is not inferable on this record that defendant's (alleged) violation of its prohibition on age discrimination involved malice or the sort of indifference that allows for an award of punitive damages. The trial court therefore did not err when it denied plaintiff's motion to amend the complaint to add a claim for punitive damages.

        *Denial of plaintiff's motion for partial summary judgment on standing.* Finally, in her fourth assignment of error, plaintiff assigns error to the trial court's denial of her motion for partial summary judgment on the issue of what the trial court and the parties' refer to as plaintiff's "standing" to bring an action under ORS 659A.403. We may review the denial of plaintiff's motion for summary judgment in this posture because this matter was resolved on cross-motions for summary judgment and did not go to trial. *Stilwell v. Seibel*, 169 Or App 613, 616-17, 10 P3d 319 (2000).

        As we understand the parties' arguments, this issue turns on whether plaintiff actually attempted to purchase a firearm and was denied that purchase by defendant. To be entitled to summary judgment on that point, plaintiff, as the party with the burden of proof on her claim under ORS 659A.403, bore the burden of producing evidence establishing that point as a matter of law. *Wieck v. Hostetter*, 274 Or App 457, 470, 362 P3d 254 (2015). Our task, then, is to assess whether plaintiff's evidence, when viewed in the light most favorable to defendant in this instance, would require all reasonable factfinders to find in her favor on the point whether she attempted to purchase the hunting rifle. *Id.* Having considered the evidence on the point, we agree with the trial court that it presents a question for the jury. Although a reasonable jury could find from the evidence presented that plaintiff attempted to purchase the hunting rifle from defendant, it would not be compelled to make

that finding. Simply put, reasonable factfinders could reach different conclusions about the nature of the interaction between plaintiff and defendant and whether it rose to the level of a prohibited denial of a service by a place of public accommodation. The trial court did not err by denying plaintiff's motion for partial summary judgment.

Reversed in part and remanded.

**KAMINS, J.,** concurring.

I join in the majority's opinion because its interpretation of this befuddling statute is the most reasonable one. I write separately because I have no confidence that that most reasonable interpretation accurately effectuates the legislature's intent. The Oregon Public Accommodation Act (OPAA or Act) is far from clear, but what is clear is that the legislature did not contemplate its use to safeguard the sale of firearms to teenagers.

As the majority observes, the statute is ambiguous. *See* 315 Or App at 133. Subsection (1) prohibits discrimination on the basis of "age if the individual is of age, as described in this section, or older," but neither "this section"—nor anywhere else in the statute—defines "of age." *See* ORS 659A.403(a). Indeed, the only ages specified in the section allow regulating marijuana use by persons under 21 and the offering of discounts to persons 50 or older. As a result, it is unclear from the text of the statute what the legislature intended "of age" to mean.

The majority identifies several points supporting the conclusion that the legislature intended "of age"—and thus the provisions of the OPAA—to protect all persons 18 or older. First, the ordinary meaning of "of age"—when divorced from the phrase "as described in this section"—is the age of majority, which in Oregon is 18. ORS 109.510. In addition, subsection (2) of ORS 659A.403 provides explicit exceptions for the enforcement of laws regulating the use of alcohol and marijuana by persons under the age of 21. Those exceptions would be surplusage if the statute only protected persons 21 or older. Finally, ORS 659A.406 prohibits aiding and abetting discrimination on the basis of "age if the individual is 18 years of age or older." As the majority points out,

it "would make little sense" for the OPAA to allow discrimination against persons age 18 to 20 but prohibit aiding and abetting that same discrimination. 315 Or App at 135-36.

Defendant, on the other hand, identifies contextual indicators supporting the opposite conclusion. Perhaps most persuasive is the fact that there are already a number of statutes that explicitly authorize differential treatment of persons aged 18 to 20. 315 Or App at 137. These include: ORS 167.755 (prohibiting the sale of tobacco products and inhalant delivery systems to persons under 21), ORS 461.600(2) (prohibiting persons under 21 from playing video lottery), ORS 646A.140(1)(b), (c) (implicitly permitting car rental companies to set a minimum age requirement), ORS 480.225(1)(e) (requiring that a person be 21 to obtain a certificate of possession of explosives), ORS 471.482 (placing restrictions on the employment of persons aged 18 to 20 by holders of liquor licenses), ORS 820.200(1) (prohibiting persons under 21 from operating public passenger vehicles), ORS 732.085 and ORS 732.305 (requiring that incorporators and directors of domestic insurance companies be 21 or older), ORS 555.130 (requiring that a person be 21 or older to reclaim land under the Carey Act), and ORS 811.632(1) (requiring that volunteer parking enforcers be at least 21). Each law potentially implicates the OPAA, because the definition of "public accommodation" in the OPAA includes "any service to the public that is provided by a public body *** regardless of whether the service is commercial in nature." ORS 659A.400(1)(c).

Each of those statutes allows, or even requires, places of public accommodation to discriminate against young adults, notwithstanding the OPAA. If "of age" meant 18, the OPAA should protect people over 18 from precisely the discrimination authorized by those statutes. Construing the OPAA as the majority does, "to prohibit places of public accommodation from discriminating against persons aged 18 and older, *unless some other provision of law allows for differential treatment*," is not a wholly satisfactory resolution to this conflict. 315 Or App at 137 (emphasis added). Rather, that reading—although it is the best that we can do with what the legislature has given us in this circumstance—requires

us to "insert what has been omitted," despite the legislative prohibition against doing just that. ORS 174.010; *see also Crooked River Ranch Water Company v. PUC*, 224 Or App 485, 490, 198 P3d 967 (2008), *rev den*, 346 Or 361 (2009) ("Of course, we cannot supply language that the legislature has omitted.").

What is more, several statutes actually indicate the legislature's preference to *limit* firearm usage by people between the ages of 18 and 21. ORS 181A.855(1)(a) requires that certified armed private security professionals be 21 or older, while certified unarmed private security professionals may be 18 or older. ORS 166.291(1)(b) requires that a person be at least 21 years old in order to qualify for a concealed handgun license. Finally, ORS 497.360(3)(a) requires that supervisory hunters be 21 or older; a supervisory hunter must be present for a child aged 9 to 16 to hunt lawfully. Although those statutes do not authorize differential treatment of 18- to 20-year-olds in all situations related to firearms, those legislative tea leaves undermine our conclusion that the legislature intended to *protect* the ability of 18- to 20-year-olds to be treated the same as adults when it comes to firearm restrictions.

Analyzing prior versions of the OPAA only adds to the difficulty. When it was first enacted in 1953, the Act only prohibited discrimination "on account of race, religion, color or national origin." *Former* ORS 30.670 (1953). Age was added as a protected classification in 2003. Or Laws 2003, ch 521, § 1. The present ambiguity was created in 2015, when the legislature faced the difficult task of implementing Ballot Measure 91 (2014), which legalized the use and sale of recreational marijuana. As part of more than 100 amendments, the legislature deleted the specification of age—which previously read "18 years of age or older"— and replaced it with "as described in this section." Or Laws 2015, ch 614, § 27. Although the removal of "18 years of age or older" appears to be a byproduct of the rushed effort to implement a far-reaching ballot measure, we are left with an interpretation that reinserts language that the legislature deleted. The only inference I can confidently draw from this morass is that the legislature never directly considered

whether to prohibit retailers from declining to sell firearms to persons under 21.

Bi-Mart argues that its policy reflects an effort at responsible corporate citizenship to address a problem that has evaded policy solutions. Indeed, gun violence in the United States has increased precipitously in the past two years. 2020 saw an unprecedented spike in gun-related deaths, and 2021 is on track to see an even higher number. Reis Thebault, Joe Fox, & Andrew Ba Tran, *2020 Was the Deadliest Gun Violence Year in Decades. So far, 2021 Is Worse*, The Washington Post (June 14, 2021).[1] Oregon is no exception. In particular, the City of Portland has experienced a continuous rise in gun violence since the end of 2019. Christopher Keizur, *Gun Violence Continues to Spike Across Multnomah County*, Pamplin Media Group (Sept 16, 2021).[2]

Bi-Mart contends that its policy comes not from animus towards young people, but to fill the void of legislative inaction in addressing gun violence. Indeed, the only thing clear about the OPAA is that the legislature was not taking action to limit or facilitate gun sales. Nonetheless, in our effort to effectuate the legislature's intent, the most reasonable construction of the statute requires us to thwart Bi-Mart's efforts. As the OPAA is written, it prohibits companies from restricting firearm sales to teenagers. Whether that result reflects the intent of the legislature is another question altogether.

I concur.

---

[1] https://www.washingtonpost.com/nation/2021/06/14/2021-gun-violence/ (accessed Oct 5, 2021).

[2] https://pamplinmedia.com/go/42-news/521959-417116-gun-violence-continues-to-spike-across-multnomah-county (accessed Oct 5, 2021).